Filed 4/21/14  MetWest Ventures v. Wilshire State Bank CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| METWEST VENTURES, | B249534 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC451693) |
| v. | |
| WILSHIRE STATE BANK, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert L. Hess, Judge.  Affirmed.

King, Holmes, Paterno & Berliner, Howard E. King and Seth Miller for Plaintiff and Appellant.

Frandzel Robins Bloom & Csato, Thomas M. Robins and Damon Rubin for Defendant and Respondent.

MetWest Ventures, LLC ("MetWest") sued Wilshire State Bank, now known as Wilshire Bank (the "Bank") for breach of a Letter of Intent which it contended contained all of the material terms of a purchase and loan agreement between the parties. On the Bank's motion for summary judgment, the trial court found that the parties had not entered into an enforceable purchase agreement, and entered judgment in favor of the Bank. We concur, and so affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

MetWest and the Bank entered into a "Letter of Intent" dated November 29, 2010 (the "LOI") with regard to the purchase of seven of the Bank's "sub-performing" loans (the "Loans"). The LOI states: "This Letter of Intent sets forth a summary of terms and conditions under which Met West Ventures LLC and/or Assignee . . . would be willing to purchase the above-referenced loans. Upon acknowledgement of this letter by you, the parties will commence good faith negotiations, with the objective to enter into a definitive Purchase Agreement . . . as soon as possible. This is a binding letter of intent." The LOI identified "Key Terms of Transaction" including the purchase price of $12,454,607, MetWest's 25 percent cash down payment, and the Bank's financing of the remainder of the purchase price for a period of two years at a specified interest rate. Within two weeks after signing the LOI, and prior to the parties' negotiation of a definitive Purchase Agreement, the Bank sold the Loans to a third party.

MetWest sued the Bank for breach of the LOI, seeking damages for its lost profits as a result of the Bank's failure to consummate the loan purchase transaction.

The Bank moved for summary judgment or, in the alternative, summary adjudication (the "Motion"). On March 28, 2013, the trial court granted the Motion, ruling that the LOI "was not a binding agreement to sell the Loan[s] but rather an agreement to agree. It provided the framework for negotiations of [a definitive] agreement, but omitted all material terms regarding payment, which were essential to the transaction."

2

The court stated the reasons for its ruling, as follows:

"(a) the LOI was silent as to the terms of interest and repayment of the $9.4 million loan balance over the 2-year period stated in the LOI, including that there was no agreement on whether interest was payable monthly, quarterly, semiannually or at maturity, or in installments, or if in installments what amortization rate would be used.

"(b) Another missing term was the identity of the buyer/borrower.

"(c) Further, other material terms were missing:  Borrower covenants/kept-well clauses; borrower representations and warranties; assuming the loan(s) would be collateralized by the loans being purchased, whether the loans would be cross-collateralized; whether the loan(s) would be pre-payable in whole or in part; events of default and right to cure, if any; and whether a guaranty or guarantees would be required and, if so, by whom.

"(d) The MetWest contingencies which would have to be satisfied prior to release of the $100,000 deposit by MetWest to the Bank (and, obviously, contingencies to the closing of the transaction itself) were not stated or described in the LOI, or discussed by the parties.

"(e) Nor was the nature of MetWest's 'due diligence' mentioned or discussed.

"(f) Finally, if, as the Court has found, the LOI is missing material essential terms, the addition of the phrase, 'this is a binding letter of intent' by Reay does not add anything and cannot, in and of itself, supply, or substitute for the missing terms."

On May 6, 2013, the court entered judgment in favor of the Bank and against MetWest.  MetWest timely appealed the judgment.

## STANDARD OF REVIEW

"On appeal from a summary judgment, our task is to independently determine whether an issue of material fact exists and whether the moving party is entitled to summary judgment as a matter of law.  [Citation.]  'We independently review the parties' papers supporting and opposing the motion, using the same method of analysis as the trial

3

court. Essentially, we assume the role of the trial court and apply the same rules and standards.' [Citation.] We apply the same three-step analysis required of the trial court. First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond. Second, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in the moving party's favor. When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable issue of material fact. [Citations.] In so doing, we liberally construe the opposing party's evidence, strictly construe the moving party's evidence, and resolve all doubts in favor of the opposing party. [Citations.]" (*Hutton v. Fidelity National Title Company* (2013) 213 Cal.App.4th 486, 493-494.) Whether a contract is sufficiently definite to be enforced is a question of law for the court to determine. (*Ersa Grae Corp. v. Fluor Corp.* (1991) 1 Cal.App.4th 613, 623.)

DISCUSSION

The single issue before the trial court was whether the LOI constituted a binding purchase agreement or simply a contract to negotiate the terms of a proposed agreement to be entered into only after all the essential terms of the proposed transaction had been assented to by the parties.

The law does not provide a remedy for a breach of an agreement to agree in the future, and the court may not speculate upon what the parties would have agreed to. (*Alaimo v. Tsunoda* (1963) 215 Cal.App.2d 94, 99.) In a business transaction, when an essential item is reserved for future determination, no enforceable obligation is thereby created, for neither law nor equity provides a remedy for breach of an agreement to agree in the future. (*Id*. at p. 98.) If an essential element is reserved for the future agreement of both parties, the promise cannot give rise to any legal obligation until the occurrence of such future agreement. Since either party by the very terms of the promise may refuse to

4

agree on anything proposed by the other party, it is impossible for the law to affix any obligation to such a promise. (*Ibid*.)

While it is true, as MetWest asserts, that the law favors enforcement of contracts, it is equally true that the court "do[es] not have the power to create for the parties a contract that they did not make and cannot use language that one party now wishes were there." (*Vons Companies, Inc. v. United States Fire Ins. Co.* (2000) 78 Cal.App.4th 52, 59.) Thus the court cannot take what is clearly an agreement to agree and remake it into a binding purchase agreement.

As previously indicated, the LOI states in its introductory paragraph: "This letter of intent sets forth a summary of terms and conditions under which MetWest Ventures LLC and/or Assignee would be willing to purchase the above-referenced loans. Upon acknowledgement of this letter by you, the parties will commence good faith negotiations with the objective to enter into a definitive Purchase Agreement . . . as soon as possible. This is a binding letter of intent." Thus, MetWest and the Bank agreed in the LOI to "commence good faith negotiations" with the objective to enter into a "definitive Purchase Agreement." "Commence negotiations" means exactly what it says—the parties agreed to start the process of negotiation of an agreement for the sale and finance of the Loans by the Bank to MetWest or an as yet unidentified assignee. This language clearly anticipates that a final, definitive contract would not be reached in the absence of further negotiations and agreement between the parties. (See *Laks v. Coast Fed. Sav. & Loan Assn.* (1976) 60 Cal.App.3d 885, 891.)

The fact that the LOI states that it is a "binding letter of intent" does not transform it into a final agreement that contains all material terms. Indeed at oral argument on the Motion, MetWest's lead counsel conceded this was the case:

"The Court: Well, if that is necessary then – ok – the words 'this is a definitive agreement' standing alone –

"Mr. King: Don't make a binding agreement.

"The Court: Don't make it a binding agreement.

5

"Mr. King: Right.

"The Court: And if you have a fully detailed agreement you don't need 'This is a binding agreement.'

"Mr. King: Correct."

MetWest admitted that the LOI was silent as to (1) whether the loan was to be amortized over its two year span; (2) when payments of interest and/or principal would be made; (3) what borrower covenants (such as loan to value rations), keep-well clauses, financial reporting, representations and warranties would govern the financing of the purchase price; or (4) whether the loan would be collateralized by the assets being purchased, and whether the loans would be cross-collateralized. MetWest further admitted that the LOI was silent as to (5) whether the loan would be pre-payable in whole or in part; (6) what events other than nonpayment at maturity would constitute events of default, rights of the Bank on default, or MetWest's right to cure, if any; (7) what criteria the Bank would require to qualify the assignee-borrower; or (8) whether, in view of the identity and financial strength of the assignee/borrower, one or more guarantees would be required by the Bank.

The LOI also fails to identify a specific buyer/assignee of the Loans and borrower(s) of the $9 million plus loan, to be obtained from the Bank to finance the balance of the purchase price. The LOI merely identifies the potential purchaser as MetWest or assignee; it was not contemplated that MetWest itself would be the purchaser. Indeed, at the time that the LOI was signed, the "assignee" was expected to be a newly created special purpose entity which had not yet been created.

In *Peterson Development Co. v. Torrey Pines Bank* (1991) 233 Cal.App.3d 103, the court discussed the requirements for there to be a binding loan commitment.[1] It held, "A loan commitment is not binding on the lender unless it contains all of the material

---

[1]    In the present case the Bank was both the seller and the lender; it was selling the Loans and financing a portion of the purchase price. Thus, the LOI contemplated a definitive agreement being entered into for both the sale of the Loans and the financing by the Bank of 75% of the purchase price.

6

terms of the loan. . . . When the commitment does not contain all of the essential terms the prospective borrower cannot rely on the commitment and the lender is not liable for either breach of contract or promissory estoppel. The material terms of a loan include the identity of the lender and borrower, the amount of the loan, and the terms of repayment." (*Id.* at p. 115.) The LOI does not identify the true borrower/purchaser, nor does it contain all of the terms for the repayment of the purchase money loan.

Further, *Laks v. Coast Fed. Sav. & Loan Assn., supra,* 60 Cal.App.3d 885, discussed, among other things, the importance of an agreement on terms of repayment with respect to the issue of whether the bank had made a binding commitment. In referencing "other essentials" which were absent from the commitment letter, the court stated: "Other essentials are absent, namely, payment schedules for each loan, identification of the security, prepayment conditions . . . and rights and remedies of the parties in case of default. None of these, standing alone, would necessarily make the offer conditional if missing. However, the fact that so many important conditions are absent, further emphasizes the conditional nature of the letter and strengthens the argument that the parties were still in the negotiation stage." (*Id.* at p. 891.)

The facts in the present case are even more persuasive than those presented to the court in *Laks* in support of the trial court's finding that the LOI was only an interim indication of the parties' intention to enter into a definitive purchase agreement, which would include many essential terms not yet agreed upon.

MetWest contends that none of the items the Bank says are missing from the LOI were essential because, it argues, the parties would surely have agreed to all of those missing terms when negotiating the terms of the definitive purchase agreement. Moreover, it contends that if a term was essential, the parties would have included it in the LOI. Thus, because the parties did *not* include a provision in the LOI, the only logical conclusion is that it *was not* an essential provision. This circular argument is unconvincing.

7

MetWest also seeks to distinguish the aforesaid cases of *Peterson Co., Inc. v. Torrey Pines Bank, supra,* 233 Cal.App.3d 103 and *Laks v. Coast Fed. Sav. & Loan Assn., supra,* 60 Cal.App.3d 885, because they dealt with loan commitments and not with a purchase agreement. However, in the present case the LOI involved a proposed transaction consisting of both the purchase of the Loans and the financing of the purchase price. Further, the legal principles regarding when a document is an agreement or merely an agreement to agree does not vary based on the subject of the agreement. (See, e.g., *Coleman Engineering Co. v. North Am. Aviation, Inc.* (1966) 65 Cal.2d 396 [agreement for engineering services]; *Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199 [software marketing contract]; *Copeland v. Baskin Robbins* (2002) 96 Cal.App.4th 1251 [purchase of ice cream manufacturing plant]; *Beck v. American Health Group Internat., Inc.* (1989) 211 Cal.App.3d 1555 [employment agreement]; *Smissaert v. Chiodo* (1958) 163 Cal.App.2d 827 [contract to sell real estate].)

In support of its position, MetWest relies on cases which deal not with letters of intent but with definitive contracts in which non-essential provisions were specifically left to be decided by the parties at a later date. (*City of Los Angeles v. Superior Court* (1959) 51 Cal.2d 423, 433 ["location and size, within 5 acres, of (Chavez Ravine, where Dodger Stadium was to be built) to be used by the city for oil drilling"]; *Hotel Del Coronado Corp. v. Foodservice Equipment Distributors Ass'n.* (9th Cir. 1986) 783 F.2d 1323, 1326 [advance booking of hotel rooms for a convention].) In each of these cases, the appellate courts found in essence that a provision of the contract, to be agreed to a later date, was not an essential term, and the fact that it would be determined at a future date did not make the contract unenforceable.

Finally, although the trial court did not base its ruling on this analysis, application of the rules of the interpretation of written instruments mandates affirmance of the judgment. "'The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the "mutual intention" of the parties. "Under statutory rules of contract interpretation, the mutual intention of the

8

parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.,* § 1639.) The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' (*id.,* § 1644), controls judicial interpretation. (*Id.,* § 1638.)" [Citations.].'" (*MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 647-648.)

The written instrument here at issue does not state "This is a binding purchase agreement," but rather, "This is a binding letter of intent." The terms of the LOI express the hopeful expectation that the parties will successfully negotiate a binding purchase and loan agreement. Thus, the letter states that MetWest "would be willing to purchase" the loans, and that "the parties will commence good faith negotiations, with the objective to entered into a definitive Purchase Agreement." In short, the LOI obligates the parties to enter into good faith negotiations for the purchase of the Loans. As the court in *Copeland v. Baskin Robbins U.S.A.*, *supra*, 96 Cal.App.4th 1251 observed, a party to a contract to negotiate the terms of an agreement is not without a remedy if the failure to execute a definitive agreement was a result of the other party's failure to negotiate, or to negotiate in good faith. (*Id.* at p. 1261.) However, damages for breach of a contract to negotiate, such as the LOI in this case, are measured by the injury the plaintiff suffered in relying on the defendant's promise to negotiate in good faith, such as out-of-pocket expenses or lost opportunity costs. (*Id.* at pp. 1262-1263.) MetWest has specifically disclaimed its intent to recover reliance damages.

9

DISPOSITION

The judgment is affirmed.  The State Bank shall recover its costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



MINK, J.*


I concur:



TURNER, P. J.

---

MOSK, J., Concurring

I concur.

Whether a letter of intent is a binding contract depends on the intentions and expectations of the parties, which "may be inferred from the conduct of the parties and surrounding circumstances." (*California Food Service Corp. v. Great American Ins. Co.* (1982) 130 Cal.App.3d 892, 897.) "Among the issues to be considered are whether the parties either agreed to the material terms in the letter of intent or if they left some material terms for future agreement, thus making it merely an 'agreement to agree' and whether the parties intended not to be bound until the preparation and execution of a more formal agreement or the approval of some third party. [¶] These are questions of fact, determined by examination of the conduct of the parties and the surrounding circumstances." (1 Miller & Starr, Cal. Real Estate (3d ed. 2011) § 1:17, pp. 46-47.)

The parties agree that the operative document—letter of intent—is a contract. But plaintiff asserts it is a final binding agreement regarding the purchase of loans, while defendant contends it is a binding contract to negotiate in good faith a final binding contract. Whether there is an ambiguity is an issue of law. (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165.) The interpretation of the contract is a question of law for the trial court and the court on appeal. (See *Oceanside 84, Ltd. v. Fidelity Federal Bank* (1997) 56 Cal.App.4th 1441, 1448.) If there is extrinsic evidence that should be considered as to the interpretation of the contract, then the issue is one of fact. (*De Anza Enterprises v. Johnson* (2002) 104 Cal.App.4th 1307, 1315.)

The letter of intent is not ambiguous. It provides that the "summary of terms and conditions" are those by which plaintiff "would be willing to purchase" the loans. It then

1

provides that upon acknowledgement, "the parties will commence good faith negotiations, with the objective to enter into a definitive Purchase Agreement . . . as soon as possible." It then sets forth "Key Terms of Transaction." This language clearly provides that this is an agreement to agree. The language, "this is a binding letter of intent" simply means there is an agreement to enter into "good faith negotiations."

None of the extrinsic evidence is inconsistent with this unambiguous language. Defendant in a cover email inquired as to whether there should be one loan or separate loans and said, "We can work on all of this over the 15 days of due diligence so we can have a contract drawn by the end of that period and move on to close the transaction." A bank representative's letter to the broker that, "I'm going to buy you a steak dinner after we close this transaction. . . . Let's move forward, let's get this deal done. Please, please, please do not have them re-trade this deal. I fought really hard to get this deal done. We had a couple competing offers one of which was actually better than this but I convinced them that you will close. So let's get it closed." Plaintiff's evidence of its unexpressed intent is irrelevant. (*Essex, Ins. Co. v. Heck* (2010) 186 Cal.App.4th 1513, 1524, fn 2.)

Plaintiff does not set forth material facts of parol evidence that are inconsistent with the clear language of the letter of intent that it was not a final binding agreement.

I do not think it is necessary to try to determine if the letter of intent lacks essential material terms for it to be a final, binding agreement. Indeed, the absence of terms may simply mean that they are not part of this deal.

I concur in affirming the judgment.


MOSK, J.


2