Filed 3/16/15  Grigorian v. Citibank CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| EMIL B. GRIGORIAN, | B253583 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. YC066693) |
| v. | |
| CITIBANK, N.A. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ramona G. See, Judge.  Reversed.

Law Offices of John M. Boyko and John M. Boyko for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Roy G. Weatherup, Daniel G. Bath, Caroline E. Chan and Allison A. Arabian for Defendants and Respondents.

* * * * * *

In this mortgage foreclosure case, plaintiff Emil B. Grigorian appeals the trial court's judgment dismissing his third amended complaint (TAC) without leave to amend after the trial court sustained a demurrer filed by defendants Citibank, N.A. and Citimortgage, Inc. He argues he has sufficiently alleged a claim for promissory estoppel following the foreclosure on his home. We agree and reverse.

## BACKGROUND

### 1. Complaint

The facts are taken from the operative TAC, which we accept as true. (*Aceves v. U.S. Bank N.A.* (2011) 192 Cal.App.4th 218, 222 (*Aceves*).)

Plaintiff obtained a $386,000 mortgage loan on his home in May 2006. In 2007 he was laid off from his employment, and between 2007 and 2009 he experienced some financial hardships and exhausted his resources attempting to keep up with his mortgage payments. Starting in December 2009, he sought assistance from defendants to avoid foreclosure. Nevertheless, on November 5, 2011, defendants recorded a notice of default to commence foreclosure proceedings.

Between October and December 2011, plaintiff sought advice from bankruptcy counsel regarding the foreclosure, who advised him that a chapter 13 bankruptcy proceeding would enable him to save his home if he could present and have a plan confirmed by the bankruptcy court. That plan could allow him to maintain his current mortgage payments while paying off any arrearages over a period of up to five years, which would cure his default and result in the full reinstatement of his mortgage loan. According to plaintiff, with his wife's income he was willing and able to propose such a plan if it became necessary to do so. In the meantime, plaintiff continued to diligently work with, and provide all documents requested by, defendants in an attempt to avoid foreclosure.

2

On February 7, 2011, defendants recorded a notice of trustee's sale setting a foreclosure sale date of February 28, 2011.[1]  Plaintiff continued to work with defendants to avoid foreclosure, and the foreclosure sale was postponed month to month for about a year to February 23, 2012.  During that year, plaintiff had "numerous discussions with various representative[s] and/or agents of the defendants, and each of them, culminating in his discussions with Mr. Dennis Keating, in which plaintiff specifically advised Mr. Keating that he intended to file a Chapter 13 proceeding under the U.S. Bankruptcy Code to avoid the pending foreclosure sale of his property and to cure the default over five years as provided for by the Bankruptcy Code, if no other foreclosure avoidance option was made available to him by the defendants, and each of them."

On February 22, 2012—one day before the scheduled foreclosure sale— Mr. Keating "promised plaintiff that the defendants would not conduct the scheduled foreclosure sale of plaintiff's Property if plaintiff would forbear from filing a Chapter 13 bankruptcy proceeding and enter into an oral forbearance agreement to repay the arrearages then due within one year, which would later be reduced to writing, and further, plaintiff was to give [defendants] the ability to withdraw funds from his bank account, the sum of $8,000 as a 'down payment['] on the above-said forbearance agreement against the balance of the then alleged arrearages."  Plaintiff actually, reasonably, and foreseeably relied on Mr. Keating's promise by not filing for a chapter 13 bankruptcy, which would have otherwise permitted him to reinstate his loan by allowing him to repay the arrearages over five years, and by making the $8,000 "down payment" available in his bank account for withdrawal by defendants.

Defendants did not withdraw the money plaintiff made available.  Instead, the next morning on February 23, 2012, defendants completed the foreclosure sale of plaintiff's home.  Defendant Citibank, N.A. was the successful bidder at $328,054.53, the alleged

---

[1]    There is some discrepancy in the dates alleged.  Plaintiff alleges defendants commenced foreclosure proceedings by recording a notice of default in November 2011 but alleges defendants recorded a notice of trustee's sale 10 months earlier in February 2011.  This discrepancy is immaterial to our decision.

3

outstanding balance on the mortgage loan, although the value of the property was $605,000. A trustee's deed was thereafter recorded. As a result of the sale, plaintiff suffered the "detriment of losing his right to use the protection and provisions offered by a Chapter 13 bankruptcy to restructure and be able to repay the arrearages on his debt to the defendants[] over a period of up to five years."

Based on these facts, plaintiff alleged a single claim for promissory estoppel.[2]

## 2. Demurrer

Defendants demurred to the TAC on three grounds: (1) plaintiff failed to sufficiently allege detrimental reliance; (2) defendants' alleged promise was conditional; and (3) the alleged oral modification of the parties' rights under the deed of trust was barred by the statute of frauds. In opposition, plaintiff argued he adequately alleged detrimental reliance because he refrained from filing for chapter 13 bankruptcy, citing *Aceves*, which involved a plaintiff who declined to convert her chapter 7 bankruptcy to a chapter 13 bankruptcy in reliance on a bank's promise to work with her to modify her mortgage loan. (*Aceves, supra*, 192 Cal.App.4th at pp. 227-230.) Plaintiff also argued defendants' promise was not conditional because all the conditions were fulfilled, and defendants were estopped from arguing the promise was barred by the statute of frauds. In reply, defendants argued plaintiff failed to allege any facts that he "realistically would have" filed for bankruptcy before the foreclosure sale. (Underscoring and italics omitted.) They also repeated their arguments that any promise was conditional and the statute of frauds barred plaintiff's claim.

---

[2]    In his original and first amended complaints, plaintiff alleged claims for fraud, breach of contract, cancellation of deed, and quiet title. The trial court sustained defendants' demurrer to the first amended complaint with leave to amend. In his second amended complaint, plaintiff realleged his fraud, cancellation of deed, and quiet title claims, but he replaced his breach of contract claim with a claim for promissory estoppel. Defendants again demurred, which the trial court sustained without leave to amend. The court declined to enter judgment of dismissal immediately, however, pending the outcome of a then-pending motion for leave to file a third amended complaint, which the court eventually granted. Plaintiff has not challenged any of these intermediate rulings on appeal so we will not address them further.

4

The trial court granted the demurrer without leave to amend, reasoning that "the pleading admits that the subject promise was conditional and the conditions were not met. Further, there are no allegations of Defendants' acceptance."[3]  The court entered judgment dismissing the TAC and plaintiff timely appealed.

## DISCUSSION

### 1. *Standard of Review*

"We review an order sustaining a demurrer without leave to amend de novo [citation], assuming the truth of all properly pleaded facts as well as facts inferred from the pleadings, and give the complaint a reasonable interpretation by reading it as a whole and its parts in context [citation].  However, we give no credit to allegations that merely set forth contentions or legal conclusions. [Citation.]  A complaint will be construed 'liberally . . . with a view to substantial justice between the parties.' [Citation.]  If the complaint states any possible legal theory, the trial court's order sustaining the demurrer must be reversed.  [Citation.]  Also, 'if there is a reasonable possibility the defect in the complaint could be cured by amendment, it is an abuse of discretion to sustain a demurrer without leave to amend.'" (*Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1056-1057.)

### 2. *Analysis*

"In California, under the doctrine of promissory estoppel, '[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'" (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 310.) """"The elements of a promissory estoppel claim are '(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3)

---

**3**    The trial court granted defendants' request for judicial notice of the second amended complaint and the order sustaining it, but denied plaintiff's request for judicial notice of a declaration filed by Mr. Keating earlier in the case.  Plaintiff does not challenge those rulings on appeal.

[the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.'"'" (*Aceves, supra*, 192 Cal.App.4th at p. 225.)

The trial court found plaintiff's claim failed for two reasons: "the pleading admits that the subject promise was conditional and the conditions were not met" and "there are no allegations of Defendants' acceptance." Neither reason withstands scrutiny. Allegations of plaintiff's acceptance were not required because, according to plaintiff's allegations, *defendants* offered to allow him to pay his arrearages provided he refrained from filing a chapter 13 bankruptcy and made $8,000 available in his bank account for defendants' withdrawal. Thus, the only acceptance even arguably at issue was plaintiff's, and he at least implicitly accepted the offer by not filing for bankruptcy to stave off the foreclosure sale and by making the funds available to defendants.

In support of the trial court's second ground, defendants argue plaintiff did not allege a "clear and unambiguous" promise because it was conditional. While defendants' promise was certainly conditional, it was not unclear or ambiguous for that reason. (*Aceves, supra*, 192 Cal.App.4th at p. 226; *Garcia v. World Savings, FSB* (2010) 183 Cal.App.4th 1031, 1045 (*Garcia*).) Indeed, we cannot see what additional clarity would be needed. On behalf of defendants, Mr. Keating promised not to conduct the foreclosure sale if plaintiff did not file bankruptcy, entered an oral forbearance agreement to repay the arrearages within a year to be later reduced to writing, and made $8,000 available in his bank account for defendants to withdraw. Plaintiff alleged he fulfilled each of those conditions: he did not file bankruptcy and he made the $8,000 "down payment" available in his bank account for withdrawal by defendants. Surprisingly, defendants argue plaintiff did not meet the monetary condition because he never actually paid $8,000 to defendants. That is plainly not what defendants' promise required; plaintiff was only required to make the payment available for defendants' withdrawal. Defendants also claim plaintiff did not meet the condition that the oral forbearance agreement would *later* be reduced to writing. But that was not a condition of defendants' offer. As alleged by plaintiff, defendants' promise required plaintiff only to *enter* an oral forbearance agreement, which would be later reduced to writing as required by the statute of frauds.

6

(*Secrest v. Security National Mortgage Loan Trust 2002-2* (2008) 167 Cal.App.4th 544, 552-553 (*Secrest*).) That makes sense given the parties were in the midst of negotiations at the 11th hour before the foreclosure sale. It is of course no surprise that the oral agreement was never reduced to writing given defendants immediately moved forward with the foreclosure sale despite their promise not to.

Defendants also argue the "essential terms" of the forbearance agreement were missing, such as how the arrearages would be paid, what the interest rate would be, or what would happen in the event of a default. According to defendants, the parties' agreement was at best "an agreement to agree" that cannot form the basis for promissory estoppel, citing *Laks v. Coast Fed. Sav. & Loan Assn.* (1976) 60 Cal.App.3d 885 (*Laks*). The court in *Aceves* rejected a similar argument under *Laks*. In *Aceves*, also a mortgage foreclosure case, the plaintiff filed for chapter 7 bankruptcy shortly after a notice of default and an election to sell under deed of trust was recorded against her property. (*Aceves, supra*, 192 Cal.App.4th at p. 223.) The plaintiff contacted the bank and was told, "once her loan was out of bankruptcy, the bank 'would work with her on a mortgage reinstatement and loan modification.'" (*Ibid.*) The bank also filed a motion in the bankruptcy court to lift the stay so it could proceed with the foreclosure. (*Ibid.*) Although the plaintiff intended to convert her chapter 7 bankruptcy case to a chapter 13 case and rely on the financial resources of her husband to save her home under chapter 13, she did not oppose the bank's motion to lift the stay and decided not to seek bankruptcy relief under chapter 13 in reliance on the bank's promise to work with her to reinstate and modify her loan. (*Ibid.*) Thereafter, the bank completed the foreclosure sale after the bankruptcy court lifted the stay. (*Id.* at pp. 223-224.) The Court of Appeal found the plaintiff adequately alleged a claim for promissory estoppel: "As alleged, in reliance on a promise by [the bank] to work with her in reinstating and modifying the loan, [the plaintiff] did not attempt to save her home under chapter 13. Yet [the bank] then went forward with the foreclosure and did not commence negotiations toward a possible loan solution." (*Id.* at p. 225.)

In arguing the promise in *Aceves* was unclear and ambiguous, the bank cited *Laks*. As the court explained, however, in *Laks* "the plaintiffs applied for a loan and relied on promissory estoppel in arguing that the lender was bound to make the loan. The Court of Appeal affirmed the dismissal of the case on demurrer, explaining that the alleged promise to make a loan was unclear and ambiguous because it did not include all of the essential terms of a loan, including the identity of the borrower and the security for the loan. In contrast, Aceves contends [the bank] promised but failed to engage in negotiations toward a solution of her loan problems. Thus, the question here is simply whether [the bank] made and kept a promise to *negotiate* with Aceves, not whether, as in *Laks*, the bank promised to make a loan or, more precisely, to modify a loan. Aceves does not, and could not, assert she relied on the terms of a *modified loan agreement* in foregoing bankruptcy relief. She acknowledges that the parties never got that far because [the bank] broke its promise to negotiate with her toward a mutually agreeable modification. While *Laks* turned on the sufficiency of the terms of a loan, Aceves's claim rests on whether [the bank] engaged in the promised negotiations. The bank either did or did not negotiate." (*Aceves, supra*, 192 Cal.App.4th at p. 226.)

As in *Aceves* and unlike in *Laks*, plaintiff did not, and could not, rely on the actual terms of a forbearance agreement in this case, which he has not alleged were reached at the 11th hour before the foreclosure sale. Instead, plaintiff relied on defendants' promise not to foreclose on plaintiff's property if he was willing to *enter* an oral forbearance agreement that he would pay the arrearages within one year. He clearly was willing to do so, otherwise he would not have declined to file bankruptcy to stave off the foreclosure sale. Thus, unlike in *Laks*, which turned on the sufficiency of the terms of the actual loan, the only question here is whether defendants fulfilled their promise to allow plaintiff to enter a forbearance agreement to postpone the foreclosure sale. As in *Aceves*, defendants "either did or did not" honor that promise.

Defendants further claim plaintiff did not rely on their promise to his detriment. *Aceves* also defeats this contention. As in the instant case, the court in *Aceves* found detrimental reliance from foregoing the benefits of the chapter 13 bankruptcy process.

8

"'Under Chapter 13, a debtor cannot discharge a mortgage debt and keep her home. Rather, a Chapter 13 bankruptcy offers the debtor an opportunity to cure a mortgage delinquency over time—in essence is a statutorily mandated payment plan—but one that requires the debtor to pay precisely the amount she would have to pay to the lender outside of bankruptcy. Under Chapter 13, the plan must provide the amount necessary to cure the mortgage default, which includes the fees and costs allowed by the mortgage agreement and by state law." (*Aceves, supra*, 192 Cal.App.4th at pp. 228-229.) Some of the benefits of chapter 13 bankruptcy include curing the default, reinstating the loan to predefault conditions, giving a maximum of five years to make up arrearages, and preventing foreclosure. (*Id.* at pp. 229-230.) The court also rejected the bank's argument that the plaintiff could not have afforded the payments even if she sought bankruptcy relief because she alleged she could have saved her home with the financial assistance of her husband. (*Id.* at p. 230.)

Defendants attempt to distinguish *Aceves* on its facts, arguing a chapter 13 bankruptcy was not a "realistic option" for plaintiff here. We disagree. Plaintiff alleged he had been consulting with a bankruptcy attorney in the months leading up to the scheduled foreclosure sale, suggesting he could have been prepared to file bankruptcy on short notice. Further, as in *Aceves*, plaintiff alleged his wife's income would have enabled him to propose a chapter 13 bankruptcy plan if necessary. Although after discovery defendants might eventually show plaintiff could not have "realistically" staved off foreclosure by filing a chapter 13 bankruptcy plan, that is a matter that cannot be resolved at the demurrer stage. At this point, we must accept plaintiff's factual allegations as true and we find they sufficiently allege detrimental reliance. (*Aceves, supra*, 192 Cal.App.4th at p. 230.)

In further support of the judgment below, defendants argue plaintiff cannot state a claim for promissory estoppel because the alleged oral forbearance agreement is barred by the statute of frauds. They are correct a forbearance agreement modifying the terms of a mortgage loan or deed of trust must be in writing. (See Civ. Code, §§ 1624 [agreement to sell real property must be in writing], 1698, subd. (a) ["A contract in writing may be

9

modified by a contract in writing."], 2922 ["A mortgage can be created, renewed, or extended, only by writing, executed with the formalities required in the case of a grant of real property."]; *Secrest, supra*, 167 Cal.App.4th at p. 552 [forbearance agreement modifying mortgage note and deed of trust subject to statute of frauds].) But "[a] party is estopped to assert the statute of frauds as a defense 'where [the] party, by words or conduct, represents that he will stand by his oral agreement, and the other party, in reliance upon that representation, changes his position, to his detriment.'" (*Garcia, supra*, 183 Cal.App.4th at p. 1040, fn. 10; see Civ. Code, § 1698, subd. (d) ["Nothing in this section precludes in an appropriate case the application of rules of law concerning estoppel . . . ."].) For the reasons explained above, plaintiff has adequately alleged he detrimentally relied on defendants' promise not to conduct the foreclosure sale if plaintiff did not file bankruptcy, entered into a forbearance agreement to repay the arrearages within a year to be later reduced to writing, and made $8,000 available in his bank account for defendants to withdraw. On these facts, defendants are estopped from asserting the statute of frauds to bar plaintiff's claim. (See *Garcia, supra*, at p. 1040, fn. 10.)[4]

## DISPOSITION

The judgment is reversed. Appellant is entitled to costs on appeal.


FLIER, J.

WE CONCUR:



BIGELOW, P. J.                    RUBIN, J.

---

[4]     To the extent defendants argue plaintiff had to allege "unconscionable injury" to support estoppel, we find that standard met when he lost his home in reliance on defendants' promise not to go through with the foreclosure sale. We also reject defendants' argument that plaintiffs' allegation that the oral forbearance agreement would be reduced to writing constitutes an admission that the statute of frauds applies.

10