[Civ. No. 47006. Second Dist., Div. Five. Aug. 10, 1976.]

ERNEST LAKS et al., Plaintiffs and Appellants, v.
COAST FEDERAL SAVINGS AND LOAN ASSOCIATION,
Defendant and Respondent.

**COUNSEL**

Nelson, Liker & Merrifield, Rodney E. Nelson and Shelley Mercer for Plaintiffs and Appellants.

McKenna & Fitting, Les J. Weinstein, Aaron M. Peck and Alan Holmberg for Defendant and Respondent.

**OPINION**

**HASTINGS, J.**—The facts are not in dispute. Plaintiffs and appellants, Ernest Laks and Richard Schubot (hereinafter "appellants") sought to develop a Sheraton Motor Inn located near the San Francisco International Airport. Appellants had obtained a broker to assist them in finding

the financing for the project. On January 9, 1973, Coast Federal Savings and Loan Association (hereinafter "Coast") sent to appellants' broker a letter of conditional commitment which read as follows:

Mr. Roger H. Alexander
Vice President
Kassler & Company
555 California Street Suite 4870
San Francisco, California 94104

Dear Roger:

Re: Sheraton Motor Inn - San Francisco International Airport.

Coast Federal Savings, hereinafter referred to as Coast, is pleased to move from our letter of intent to commit, dated December 11, 1972, to this conditional commitment, as follows:

Loan Amount: $7,000,000; which must be supported by appraised value with resulting loan to value ratio not in excess of 75%.

Secondary Financing: None permitted.

Interest Rate: 9.00%.

Fees: 1% non-refundable collected at time Commitment Letter accepted and an additional 1% collected at time of loan closing.

Maturity: Interim - 24 months. Permanent - 25 years.

Construction Financing: Chase Manhattan Bank to be lead lender, Wells Fargo Bank to inspect and make progress payments, Coast to participate in not more than 75% of said loan. Coast to have the option of reducing said position and increasing Wells Fargo Bank's by same amount. Coast has begun conversation with Mr. Robert Bevins, Vice President, Wells Fargo Bank (213) 683-7259 in Los Angeles.

Funding: Interim Loan to be recorded no later than March 30, 1973.

Appraisal: Must be acceptable to Coast, Chase and Wells; Coast acknowledges receipt of a feasibility study prepared by the National Feasibility Corporation. Said study is still under evaluation by Coast; please refer to correspondence between National and Coast.

Mr. Roger H. Alexander
Page 2
January 9, 1973

Ownership of proposed project between Ernest Laks and Richard Schubot to be clarified; Dunn & Bradstreet reports required on both. Final Limited Partnership Agreement subject to Coast review and approval.

Property Management: Management of subject property subject to review and approval by Coast Federal. Resume of owners management history plus copies of Management Contract, if applicable, to be forwarded for review.

Plans, specifications and detailed cost breakdown requested on proposed project.

Cordially,

Brent Gossage

BG:jl

Acknowledged by: _____
Ernest Laks

Date: ___1-15-73_____

It is this letter that is the basis for the claim for breach of contract. Coast demurred to the complaint on the ground, inter alia, that it failed to allege facts sufficient to constitute a cause of action. The court sustained the demurrer without leave to amend, holding that the letter is not an enforceable contract. The sustaining of the demurrer occurred

after counsel for appellants stated that he could not allege other facts as to the existence of a contract.[1]

Subsequently, an order dismissing the action was filed and the appellants appeal from this order.

)

## I

Appellants contend the court erred in sustaining the demurrer because the complaint sufficiently stated a cause of action for promissory estoppel. They claim that the conditional commitment letter is binding on Coast because (1) all of the conditions to defendant's commitment set forth in the letter were either met or waived by Coast, and (2) appellants relied on it to their detriment in that they proceeded with the development of the project including forbearance from seeking other financing. At the time Coast repudiated the conditional commitment, appellants had only 45 days within which to break ground on the project in order to maintain their permit. The alternative financing was substantially more expensive than that conditionally committed by respondent. They did, however, succeed in building the Motor Inn, and it is now in operation.

Appellants' claim of promissory estoppel is based on Restatement of Contracts, section 90,[2] and the cases of *Drennan* v. *Star Paving Co.,* 51 Cal.2d 409 [333 P.2d 757]; *Aronowicz* v. *Nalley's, Inc.,* 30 Cal.App.3d 27 [106 Cal.Rptr. 424]; *Saliba-Kringlen Corp.* v. *Allen Engineering Co.,* 15 Cal.App.3d 95 [92 Cal.Rptr. 799]; *Norcross* v. *Winters,* 209 Cal.App.2d 207 [25 Cal.Rptr. 821]; *Anchor Cas. Co.* v. *Surety Bond Sav. & Loan Assn.,* 204 Cal.App.2d 175 [22 Cal.Rptr. 278]; *Wade* v. *Markwell & Co.,*

---

[1]On appellant's motion for rehearing of order sustaining demurrer, a proposed amended complaint was attached to the motion. The court, in its order denying the motion, stated: "The court recognized that counsel should have an opportunity to amend; but where counsel didn't want it and/or wasn't able to plead facts to get over the demurrer, the court relied thereon." However, we reviewed the proposed amended complaint and it is also fatal in that it does not state a cause of action for promissory estoppel. It pleads the January 15, 1973, letter as an executed contract between the parties, and that Coast waived the conditions required of appellants. The conditions allegedly waived, however, do not cure the defects surrounding the construction loan. The essential terms and commitment of the lenders are still missing.

[2]Section 90 of the Restatement of Contracts states: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

118 Cal.App.2d 410 [258 P.2d 497, 37 A.L.R.2d 1363]; and *Morrison* v. *Home Savings & Loan Assn.*, 175 Cal.App.2d 765 [346 P.2d 917].[3]

█ Coast replies that the gravamen of appellants' claim is its failure to make two loans; an interim loan to finance construction, and a permanent loan. That in a loan contract the single most crucial term is the principal amount committed by the lending institution and the key paragraph of the letter is silent on this point. The paragraph states: "Construction Financing: Chase Manhattan Bank to be lead lender, Wells Fargo Bank to inspect and make progress payments, Coast to participate in not more than 75% of said loan. Coast to have the option of reducing said position and increasing Wells Fargo Bank's by same amount. Coast has begun conversation with Mr. Robert Bevins, Vice President, Wells Fargo . . ."

Coast further argues that other essential terms are missing. In essence, they are as follows:

(1) The letter lists no schedule of payment for either the interim or construction loan as required by regulation of the Federal Home Loan Bank Board.

(2) The security for the loan is not identified.

(3) The identity of the borrower is not clear.

(4) Miscellaneous items are missing; namely, prepayment conditions, terms for interest calculations, method for loan disbursements and rights and remedies of the lender in the case of default.

## II

█ The required elements for promissory estoppel in California are set forth in *Thomson* v. *Internat. Alliance of Stage Employes,* 232 Cal.App.2d 446, 454 [42 Cal.Rptr. 785]. They are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.

---

[3]These cases are easily distinguishable from the case at bench in that the promises relied upon were certain and unambiguous.

█ Coast did not make a clear and unambiguous offer. In the initial paragraph of the letter, it states it is a conditional commitment. This immediately places the offeree on notice that finalization of the terms will undoubtedly require further negotiations. This also becomes apparent from the offer itself. The paragraph on Construction Financing is clear in only one respect, namely, that Coast has begun conversation with the vice president of Wells Fargo Bank—a fact that immediately implies that final terms are far from completed. The remainder of the paragraph defies interpretation. Chase Manhattan Bank is to be lead lender, with Wells Fargo acting as the bank that will inspect the construction and based thereon make the progress payments. Fair enough. But then the very fatal language "Coast to participate in not more than 75% of said loan. Coast to have the option of reducing said position *and increasing Wells Fargo Bank's by same amount.*" (Italics added.) Coast can only increase Wells Fargo's loan if Wells Fargo has committed itself—and of course it hasn't as negotiations are still pending. Added to this is the fact that Coast has not made a binding commitment to loan *its* money on the interim financing, but has merely an option to take up to 75 percent of it. The letter is completely silent on the lead lender's (Chase Manhattan Bank's) commitment and the terms of its loan. In view of the fact that Coast would not under any circumstances take all (and maybe none) of the construction loan, and could not commit the other lenders, a full commitment was missing.

Other essentials are absent, namely, payment schedules for each loan, identification of the security, prepayment conditions, terms for interest calculations, loan disbursement procedures, and rights and remedies of the parties in case of default. None of these, standing alone, would necessarily make the offer conditional if missing. However, the fact that so many important conditions are absent, further emphasizes the conditional nature of the letter and strengthens the argument that the parties were still in the negotiation stage.

In *Burgess* v. *Rodom,* 121 Cal.App.2d 71 [262 P.2d 335], the court was dealing with a contract for purchase of real property. It said on page 73: "The agreement upon which the seller predicates his right of action acknowledges receipt of $200 as a deposit on the purchase price of the property and provides that 'The balance of the purchase price [$5,000.] is to be paid within *30* days from date hereof, as follows, to-wit: *Terms to be made as soon as new purchaser arranges for new mortgage now held by Santa Ynez Valley Bank to Burgess* (the seller).' The italicized portion of the agreement was inserted by handwriting in the blanks in a 'deposit

receipt' (California Real Estate Association Standard Form), which was signed by the plaintiff and defendant Jane E. Rodom but not signed by her husband, George. [¶] Respondent contends that the agreement is lacking in essential elements and is fatally uncertain. Hence no cause of action is stated. Her position is well founded. [¶] An action for damages for breach of contract for the purchase or sale of real property will not lie unless the writing contains the essential terms and material elements of such an agreement without recourse to parol evidence of the intention of the contracting parties. [Citations.] The law does not provide a remedy for breach of an agreement to agree in the future, and the court may not speculate upon what the parties will agree. [Citations.] . . . [¶] Applying these principles, it is clear that the deposit receipt is incomplete in one essential feature, viz., the terms upon which the balance of the purchase price is to be paid. The deposit of $200 represents only approximately 4 percent of the purchase price. It appears to have been contemplated that the remaining 96 percent would be partially financed through a new mortgage at the bank and some other arrangements made for paying or securing the balance. Hence, the handwritten insertion of the provision: 'Terms to be made as soon as new purchaser arranges for new mortgage now held' by the bank. *How this balance would be paid, whether in monthly, quarterly, semiannual or annual installments, or at the end of a specified term of years does not appear. Likewise, absent is the rate of interest. The security, if any, to be provided for this balance,* whatever it might be, is not specified. These are all important items, yet agreement with respect to each of them was 'left open for future settlement.' It is therefore established from the language which the parties painstakingly wrote into the blank space in the deposit receipt that their minds had not met upon these essential and material terms of the deal. They had simply agreed to agree upon terms in the future. In such circumstances there was no binding obligation upon the buyer to accept and pay for the land. [Citations.]" (Italics added.)

And in *Kessler* v. *Sapp*, 169 Cal.App.2d 818, 823 [338 P.2d 34], the court stated: "As we have said, the court ruled that the amended complaint did not state a cause of action for damages for the reason that the contract pleaded therein was too uncertain to be binding. This construction was a correct one and it is not disputed by the parties on the appeal. The escrow instructions of January 20th provided for the subordination of the trust deed to a first trust deed to be obtained by the purchasers; only one term of the contemplated deed of trust was set out in the instructions; namely, that the amount of the encumbrance was not to exceed $6.50 per square foot 'exclusive of garages, stairways and

porches' (evidently relating to buildings to be constructed); *the rate of interest, the amount of the monthly payments and the period of the debt were left to the future agreement of the parties.* This radical uncertainty as to a material feature of the sales agreement not only rendered it incapable of specific enforcement [citation], but also rendered unmaintainable an action for damages for its breach." (Italics added.)

Although the case at bar deals with a loan on real property rather than sale of real property, most of the essentials for a binding contract are the same. As stated above, many of the essentials are missing here but one in particular is fatal, namely a clear and unambiguous promise on the construction loan. Accordingly, the first requisite for a complaint for promissory estoppel is missing.

We also believe the third element (the offerees' reasonable and foreseeable reliance on the promise) is absent. While we are inclined to agree with appellants that lending institutions should be held to a high degree of responsibility in such commercial transactions, appellants are not completely free of blame. They appear, from the record, to be experienced businessmen. They retained the services of a loan broker to assist them. We cannot believe that they did not understand the *conditional offer* to be just that—and that the many essentials referred to were missing. They should have resolved the ambiguities and obtained a finalized agreement and not relied on the January 9, 1973, offer. In other words, they could not have had legitimate expectations that this was a binding offer; therefore, they could not reasonably have relied on it.

The order of dismissal is affirmed.

Kaus, P. J., and Stephens, J., concurred.

A petition for a rehearing was denied September 8, 1976, and appellants' petition for a hearing by the Supreme Court was denied October 6, 1976.