Filed 5/18/16  Donaldson v. Calif. Reconveyance Co. CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JOHN DONALDSON,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CALIFORNIA RECONVEYANCE<br>COMPANY et al.,<br><br>    Defendants and Respondents. | H039747<br>(Monterey County<br>Super. Ct. No. M109452) |

Plaintiff John Donaldson defaulted on a loan secured by his residence and the lender began nonjudicial foreclosure proceedings.  Donaldson responded with a lawsuit against defendants California Reconveyance Company (CRC), JPMorgan Chase Bank, N.A. (Chase), Bank of America, N.A. (BofA), and LaSalle Bank, N.A.  The gist of his operative verified first amended complaint was that his loan was made "by a non-existent bank" that sold it a few days later, that there was "no record evidence" that the note was ever transferred to Chase or assigned to BofA, and that defendants consequently lacked authority to foreclose on the property. The trial court sustained defendants' demurrers and denied Donaldson leave to file his proposed second amended complaint.  On appeal from the judgment of dismissal, Donaldson contends that the trial court erred in sustaining the demurrers and abused its discretion in denying leave to amend.  We affirm.

## I. Factual Background

As this appeal follows the sustaining of a demurrer, we take the facts from the first amended complaint, its exhibits, and matters judicially noticed. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*); *Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1627 (*Dodd*).)

Donaldson obtained a $2.5 million loan from Washington Mutual Bank, F.A. (WaMu) in May 2007. The loan was secured by a deed of trust on his Pebble Beach residence. The deed of trust named Donaldson as the borrower and trustor, WaMu as the lender and beneficiary, and CRC as the trustee. It reflected Donaldson's agreement to "irrevocably grant[] and convey[] to Trustee, in trust, with power of sale, the [Pebble Beach property]." It also provided that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the 'Loan Servicer') that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law."

Donaldson stopped making payments on the loan in November 2009. On March 30, 2010, CRC recorded a notice of default and election to sell. The notice advised Donaldson to contact Chase to bring his debt current and to stop the foreclosure. That same day, CRC recorded an assignment of the deed of trust by which Chase as successor in interest to WaMu transferred "all beneficial interest" in the deed of trust to BofA "as successor by merger to LaSalle Bank NA as trustee for WaMu Mortgage Pass-Through Certificates Series 2007-OA6 Trust . . . ."

On July 1, 2010, CRC recorded a notice of trustee's sale. The sale was originally set for July 22, 2010. It has not yet occurred.

On July 20, 2010, Donaldson filed a voluntary petition under chapter 7 of the

2

United States Bankruptcy Code.[1]  He did not list any claims or potential claims against any of the defendants in the schedule of assets that he filed with the petition or in the amended schedule of assets that he filed on August 10, 2010.  Nor did he indicate on the appropriate schedule that Chase's secured claim to his Pebble Beach property was "contingent," "unliquidated," or "disputed."  Donaldson obtained a discharge and final decree from the bankruptcy court on October 26, 2010.  His bankruptcy case was closed on October 27, 2010.

## II.  Procedural Background

Donaldson filed suit against defendants on November 29, 2010.  Defendants successfully demurred to the original complaint.

Donaldson filed his verified first amended complaint on November 7, 2011.  It alleged that WaMu "had no power to lend funds" in 2007 because it was a "defunct" entity, having "ceased to exist" in April 2005 when it changed its name to Washington Mutual.  Washington Mutual failed in 2008, and the Federal Deposit Insurance Company (FDIC) was appointed receiver.  On September 25, 2008, "Chase acquired some of [the failed bank's] $300 billion [in] assets" from the FDIC.  Donaldson alleged on information and belief that his note and deed of trust were "not included in the assets [Chase] acquired" because his loan had earlier been sold to an investment bank, which bundled his note with other residential mortgages and trust deeds into residential mortgage-backed securities that were structured into collateralized debt obligations and sold to investors.  "After the transfer, . . . WaMu was no longer the beneficiary of Plaintiff's Note and Trust Deed."  Its designation as lender was "a deception . . . intended to gain an advantage over [Donaldson] by making it impossible for [him] to discern the true Lender in an attempt to frustrate any legal recourse that [he] may have."

---

[1]     11 U.S.C. § 701 et seq.

Donaldson alleged that he owed nothing to Chase or BofA.  "The [deed of trust] does not state that Plaintiff must pay all sums, only that all secured sums must be paid. . . .  [T]he obligations owed to WaMu under the [deed of trust] were fulfilled and the loan was fully paid when WaMu received funds in excess of the balance on the Note as proceeds of sale through securitization . . . ."  Donaldson alleged that he "wishe[d] to tender to the true owner" of the note and deed of trust, who was "unknown" to him.

Donaldson alleged that in March 2010, Chase "as purported successor in interest to WaMu purportedly assigned the Deed of Trust to [BofA]" but "[t]he purported assignment was a fraud."  The transfer of a beneficial interest in the trust deed without ownership of the underlying note was "void under California law."  "There is no record evidence that Plaintiff's note was transferred by WaMu to Chase."  Consequently, Chase was "without ownership rights in [the] note and [deed of trust]" and had "no power to direct CRC to institute foreclosure proceedings . . . ."  The person who signed the assignment was "a fraudulent signer" because she signed as an officer of Chase, successor in interest to WaMu, instead of as an officer of CRC, the trustee named in the deed of trust.  "Chase was not the owner of the underlying note and therefore could not transfer the Deed of Trust."  The notice of default that CRC recorded was "a false document."  "Neither [BofA] nor Chase are [*sic*] the real party in interest to initiate this foreclosure proceeding.  They have no colorable claim of a right to receive payment."

Donaldson alleged that "after" he had gone through bankruptcy, Chase made a variety of promises about a loan modification, including that "his home was eligible for a loan modification program—we will change the terms of your loan, the interest rate, and the amount of the principal and even the principal's due date to reduce the monthly payment to an amount that you can afford."  He was motivated to refrain from filing a chapter 11[2] proceeding based on Chase's promise "that as long as the negotiations were

---

[2]     11 U.S.C. § 1101 et seq.

4

in process that Chase would not foreclose on [his] property and it was unnecessary for [him] to file a Chapter 11 proceeding." "In reliance on the loan modification, [he] spent considerable funds in installing cabinets with electric lighting inside the cabinets, done [*sic*] extensive landscaping, purchased new appliances for the kitchen, purchased an expensive electronic pool cover for the Olympic size pool, replaced all bathroom fixtures including toilets and faucets, replaced the electric gate to [his] home and painted the entire exterior of his home." The complaint sought damages, restitution of funds paid to defendants, and declaratory and injunctive relief.

Defendants demurred on the ground that the complaint failed to state facts sufficient to constitute any cause of action. Specifically, they argued that the cause of action for promissory estoppel failed to adequately allege a clear and ambiguous promise, detrimental reliance, or resulting injury. They contended that the remaining causes of action failed for lack of standing as they accrued before Donaldson filed his chapter 7 petition but he failed to list them as assets on the appropriate bankruptcy schedules. Thus, they belonged to the bankruptcy estate rather than to Donaldson, who was not the real party in interest.

Defendants argued further that the complaint was deficient even if Donaldson had standing to assert his purported causes of action. They noted among other things that the "contract void *ab initio*" cause of action failed because Donaldson could not void his loan without offering to restore everything he received of value, namely, the $2.5 million in loan proceeds. To the extent that cause of action was actually a cause of action for fraud, it failed for at least two reasons: (1) because it was beyond dispute that defendants did not originate the loan and (2) because the complaint did not allege any statements by any defendant that misled Donaldson. The wrongful foreclosure cause of action was premature because the complaint admitted that the property had not been sold. To the extent that cause of action was based on Donaldson's contention that Chase was not the owner of the loan and thus had no power to assign it, it was deficient because he alleged

5

no facts to support those bare conclusions or contentions.  To the extent that it was premised on defendants' alleged noncompliance with Civil Code section 2923, it failed because (1) Chase's declaration of compliance was attached to the notice of default that the trial court judicially noticed and the complaint admitted that Chase complied with the statute's mandate to contact the borrower to assess his financial situation and explore options to avoid foreclosure.  Defendants argued that these and other substantive deficiencies meant that Donaldson had not pleaded entitlement to injunctive relief either, which is not a cause of action but an equitable remedy.

Donaldson filed no opposition to defendants' demurrer.  Several days before the hearing, the parties stipulated to a continuance while they engaged in settlement negotiations.  A few days before the new hearing date, Donaldson filed a "Motion to Amend Complaint and Proposed [Verified] Second Amended Complaint."  The proposed complaint contained many of the same causes of action as the earlier complaint: wrongful foreclosure, quiet title, promissory estoppel, and negligence.  It also purported to assert new causes of action for breach of oral contract, breach of written contract, slander of title, cancellation of instruments, negligent misrepresentation, fraud, violation of the Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788 et seq.), unfair business practices (Bus. & Prof. Code, § 17200 et seq.) and declaratory relief.

The trial court heard both matters on September 14, 2012.  Donaldson did not oppose the demurrer on any substantive ground or explain how his proposed second amended complaint would cure the defects in his prior pleadings.

The court sustained the demurrers without leave to amend.  The promissory estoppel cause of action failed because "there are no ultimate facts alleged."  The court took judicial notice of documents filed in Donaldson's chapter 7 bankruptcy proceeding and then addressed his lack of standing to assert the remaining causes of action.  The court ruled that "the bankruptcy issue . . . has not been adequately addressed by [Donaldson].  [He] filed an [amended] complaint with knowledge of this particular issue

6

from the previous demurrer. [He] has not shown that [he] sought an abandonment by the bankruptcy trustee, or demonstrate[d] that the trustee has no interest in this lawsuit."

The court provided additional reasons to support its sustaining of the demurrer. "Regarding the second cause of action for wrongful foreclosure, there has been no foreclosure at this point, and it is premature. The allegations are not sufficient. There are no ultimate facts to support this . . . . [¶] Regarding the negligence cause of action, there are no ultimate facts alleged, and . . . the Court has no indication of whether or not there is any legal duty to anyone. [¶] Regarding the fourth cause of action [contract void *ab initio*], there's an obligation by plaintiff to tender . . . . [¶] Regarding the fifth cause of action [injunctive relief], it also fails because the other cause[s] of action fail[] . . . . [¶] Regarding the sixth cause of action, quiet title, the plaintiff must tender . . . ."

The court then addressed Donaldson's proposed second amended complaint, which failed for essentially the same reasons as the first amended complaint. "So the request to file a second amend[ed] complaint is denied."

An order of dismissal was entered on November 14, 2012 and final judgment was entered on March 8, 2013. Donaldson filed a timely notice of appeal.


### III. Discussion
### A. Standard of Review

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.]'" (*Blank*, *supra*, 39 Cal.3d at p. 318.) "[F]acts appearing in exhibits attached to the complaint will also be accepted as true and, if contrary to the allegations in the pleading, will be given precedence." (*Dodd*, *supra*, 222 Cal.App.3d at p. 1627.) "'We also consider matters which may be judicially noticed.' [Citation.]" (*Blank*, at p. 318.) "[A]ssertions contradicted by judicially noticeable facts" will not be accepted as true.

7

(*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20 (*Evans*).) "[W]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]" (*Blank*, at p. 318.) "'Specific factual allegations modify and limit inconsistent general statements.' [Citation.]" (*Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1371 (*Alfaro*).) "Where, as here, a demurrer is to an amended complaint, we may consider the factual allegations of prior complaints, which a plaintiff may not discard or avoid by making '"'contradictory averments, in a superseding, amended pleading.'"'" [Citation.]" (*Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1034.)

We "review the complaint de novo to determine . . . whether or not the trial court erroneously sustained the demurrer as a matter of law. [Citation.]" (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879.) "We will affirm if there is any ground on which the demurrer can properly be sustained, whether or not the trial court relied on proper grounds or the defendant asserted a proper ground in the trial court proceedings." (*Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1031.) On appeal, "'the plaintiff bears the burden of demonstrating that the trial court erred.' [Citation.]" (*Zipperer v. County of Santa Clara* (2005) 133 Cal.App.4th 1013, 1020 (*Zipperer*).)

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank*, *supra*, 39 Cal.3d at p. 318.) "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Ibid*.) "Plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of the pleading." (*Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636 (*Cooper*).) The showing need not be made in the trial court so long as it is made to the reviewing court. (*Dey v. Continental Central Credit* (2008) 170 Cal.App.4th 721, 731; Code Civ.

8

Proc., § 472c.)

## B. Overview: Bankruptcy Debtor's Standing

It has long been the rule that "a general demurrer for failure to state a cause of action should be sustained where the complaint may state a cause of action in someone, but not in the plaintiff." (*Klopstock v. Superior Court* (1941) 17 Cal.2d 13, 18-19.) " 'In the context of bankruptcy proceedings, it is well understood that "a trustee, as the representative of the bankruptcy estate, is the real party in interest, and is the only party with standing to prosecute causes of action belonging to the estate once the bankruptcy petition has been filed." ' " (*M & M Foods, Inc. v. Pacific American Fish Co., Inc.* (2011) 196 Cal.App.4th 554, 562 (*M&M*); *Reichert v. General Ins. Co.* (1968) 68 Cal.2d 822, 829-830, 833 (*Reichert*).)

The filing of a petition in bankruptcy creates a bankruptcy estate that includes "all legal or equitable interests of the debtor in property as of the commencement of the case." (11 U.S.C. § 541(a)(1).) These interests "include choses in action and claims by the debtor against others." (Historical and Statutory Notes to 11 U.S.C. § 541; see *Reichert*, *supra*, 68 Cal.2d at pp. 829-830.) Where events that give rise to a cause of action occur following the filing of the chapter 7 petition, that cause of action is not property of the bankruptcy estate unless it constitutes "[p]roceeds, product, [or] offspring . . . of or from property of the estate" or "[a]ny interest in property that the estate acquires after the commencement of the case." (11 U.S.C § 541(a)(6), (a)(7); *Haley v. Dow Lewis Motors, Inc.* (1999) 72 Cal.App.4th 497, 504 (*Haley*) [wrongful termination claims that arose post-petition did not belong to bankruptcy estate]; *Bostanian v. Liberty Savings Bank* (1997) 52 Cal.App.4th 1075, 1084 (*Bostanian*) [appeal dismissed for lack of standing because cause of action challenging foreclosure sale arose from the plaintiffs' interest in their residence and was therefore property of the bankruptcy estate]; *In re Grosse* (E.D. Pa. 1984) 44 B.R. 200, 201-202 ["The property allegedly appropriated postpetition by the

defendants was property of the estate as of the filing of the petition while the cause of action which arose on the purported conversion was a 'product' of that property within the meaning of § 541(a)(6)."].)

"[T]he 'bankruptcy code place[s] an affirmative duty on [the debtor] to schedule his assets and liabilities. [Citation.] . . . [¶] "The debtor has a duty to *prepare schedules carefully, completely, and accurately*." [Citations.]'" (*M&M*, *supra*, 196 Cal.App.4th at pp. 563-564.) "'[I]t is very important that a debtor's bankruptcy schedules and statement of affairs be as accurate as possible, because that is the initial information on which all creditors rely.'" (*Hamilton v. State Farm Fire & Cas. Co.* (9th Cir. 2001) 270 F.3d 778, 785.) "These matters are at the heart of the bankruptcy system, and their importance . . . can hardly be understated. The proper 'operation of the bankruptcy system depends on honest reporting.'" (*In re Mohring* (E.D. Ca. 1992) 142 B.R. 389, 394.)

"Causes of action are separate assets which must be formally listed." (*Cusano v. Klein* (9th Cir. 2001) 264 F.3d 936, 947 (*Cusano*).) "[A] Chapter 7 debtor may not prosecute on his or her own a cause of action belonging to the bankruptcy estate unless the claim has been abandoned by the trustee." (*Bostanian*, *supra*, 52 Cal.App.4th at p. 1081.) "Property of a bankruptcy estate can be abandoned by three methods: (1) after notice and hearing, the trustee may unilaterally abandon property that is 'burdensome . . . or . . . of inconsequential value' (11 U.S.C. § 554(a)); (2) after notice and hearing, the court may order the trustee to abandon such property (11 U.S.C. § 554(b)); [and] (3) any property *which has been scheduled* , but which has not been administered by the trustee at the time of closing of a case, is abandoned by operation of law. (11 U.S.C. § 554(c))." (*Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 1003 (*Cloud*).)

"'An outstanding legal claim that is abandoned by the trustee reverts back to the original debtor-plaintiff.' [Citations.]" (*M&M*, *supra*, 196 Cal.App.4th at p. 563.) "But property not formally scheduled in the bankruptcy proceeding is *not abandoned* at the close of the bankruptcy proceeding . . . . [Citation.]" (*Ibid.*; 11 U.S.C. § 554(d).) It

remains property of the bankruptcy estate even after the debtor receives a discharge in bankruptcy. (11 U.S.C. § 554(d); *Cusano*, *supra*, 264 F.3d 936, 948.) The debtor has no standing to assert those causes of action unless he takes affirmative action to reopen his bankruptcy case. (11 U.S.C. § 350(b); Fed.R. Bankr.P. 5010; see *In re JZ L.L.C.* (9th Cir. 2007) 371 B.R. 412, 418-419.)

### C. Application to Donaldson's First Amended Complaint

With the above principles in mind, we examine the causes of action asserted in Donaldson's verified first amended complaint.

### 1. Promissory Estoppel

Defendants contend that the trial court properly sustained their demurrer to Donaldson's promissory estoppel cause of action because he lacked standing to assert it, as "it accrued prior to the closing of the bankruptcy" and he failed to list it on his original or amended schedule of assets. This argument fails to distinguish between chapter 7 and chapter 11 cases.

In a chapter 11 case, a cause of action that accrues after the filing of the bankruptcy petition belongs to the bankruptcy estate. (*Bostanian*, *supra*, 52 Cal.App.4th at p. 1083; 11 U.S.C. § 541(a)(1) and (a)(7).) Absent abandonment, only the trustee can pursue that cause of action. (*Ibid.*) In a chapter 7 case by contrast, a cause of action that accrues after the filing of the petition does not belong to the bankruptcy estate unless that cause of action is a "[p]roceed[], product, [or] offspring . . . of or from property of the estate." (*Haley*, *supra*, 72 Cal.App.4th at p. 504; *Bostanian*, at p. 1084; 11 U.S.C. § 541(a)(1), (a)(7).)

Here, Donaldson alleged that "[a]fter [he] had gone through Chapter 7, on August 26, 2010," Chase "made a clear and unambiguous promise . . . ." Although the allegation is ambiguous (because August 26, 2010 was not "after" Donaldson had gone through bankruptcy), it is nonetheless sufficient to establish that his purported cause of action for

11

promissory estoppel arose after the July 20, 2010 filing of his chapter 7 petition.  Thus, it was not property of the bankruptcy estate unless it was a "[p]roceed[], product, [or] offspring" of estate property.  (*Haley*, *supra*, 72 Cal.App.4th at p. 504; *Bostanian*, *supra*, 52 Cal.App.4th at p. 1084; 11 U.S.C. § 541(a)(1), (a)(7).)  We need not resolve the proceeds, product, or offspring question because we agree with defendants' contention that even if Donaldson had standing to assert his promissory estoppel cause of action, he failed to allege sufficient facts on which it could be based.

"'"The elements of a promissory estoppel claim are '(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.'"' [Citation.]" (*Aceves v. U.S. Bank, N.A.* (2011) 192 Cal.App.4th 218, 225 (*Aceves*).)  "'[A] promise is an indispensable element of the doctrine of promissory estoppel." (*Garcia v. World Savings, FSB* (2010) 183 Cal.App.4th 1031, 1044 (*Garcia*).)  The promise must be "clear and unambiguous in its terms." (*Laks v. Coast Fed. Sav. & Loan Assn.* (1976) 60 Cal.App.3d 885, 890 (*Laks*).)  To be enforceable, it must be "'"definite enough that a court can determine the scope of the duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages."'" (*Garcia*, at p. 1045.)  "'Estoppel cannot be established from . . . preliminary discussions and negotiations.'" (*Id.* at p. 1044.)

Here, Donaldson failed to allege facts establishing a clear and unambiguous promise.  Instead he alleged a variety of promises conveyed to him in undescribed ways by unidentified Chase representatives on unspecified dates sometime after he filed his chapter 7 petition.  These included promises (1) "that Chase would modify Plaintiff's loan to the market value of the property, if Plaintiff did not commence a Chapter 11 proceeding . . ."; (2) "that as long as the negotiations were in process that Chase would not foreclose . . ."; (3) "that 'his home was eligible for a loan modification program—we will change the terms of your loan, the interest rate, and the amount of the principal and

12

even the principal's due date to reduce the monthly payment to an amount that you can afford'"; and (4) that Chase would "work with Plaintiff to modify the loan." Such varied allegations make it impossible to discern "'"the scope of the duty[,] and the limits of performance . . . ."'" (*Garcia*, *supra*, 183 Cal.App.4th at p. 1045.)

The various promises that Donaldson alleged are deficient even if we consider each one individually. The allegations that Chase would modify the loan "to the market value of the property" or to "an amount that you can afford" are simply not definite enough for a court to determine the scope of the alleged duty. They are far less definite than promises the *Laks* court held insufficient because numerous "essentials [were] absent, namely, payment schedules for each loan, identification of the security, prepayment conditions, terms for interest calculations, loan disbursement procedures, and rights and remedies of the parties in case of default." (*Laks*, *supra*, 60 Cal.App.3d at p. 891.)

Donaldson's allegations that Chase would "work with" him to modify the loan and would postpone the foreclosure "as long as the negotiations were in process" are also too vague to support a claim for promissory estoppel. This is particularly so where it was obvious from the complaint's references to the "*proposed*" or "*attempted* foreclosure" and to defendants' "continuing . . . *efforts*" to conduct a sale that the foreclosure was in fact postponed. (Italics added.) Further, it can be inferred from exhibits to the complaint and judicially-noticed materials that Chase made efforts to negotiate. The notice of default and the notice of trustee's sale both include declarations of compliance with the statute requiring a lender to contact the borrower to discuss the borrower's financial situation and explore options for avoiding foreclosure. Additionally, Donaldson alleged that Chase told him "[that] he would just have to file some more income statements, appraisals, etc." It is thus unclear whether Donaldson claims that Chase promised to continue negotiating indefinitely or only until it became clear that a mutually agreeable solution was unachievable. The complaint does not allege what, if anything, would

13

permit Chase to terminate the negotiations and proceed with the foreclosure. The demurrer to this cause of action was properly sustained because the alleged promise was not "clear and unambiguous in its terms." (*Laks*, *supra*, 60 Cal.App.3d at p. 890.)

Donaldson's reliance on *Aceves* is misplaced. Aceves alleged a single promise by her bank "that [it] would not foreclose on [her] home without first engaging in negotiations with her to reinstate and modify the loan on mutually agreeable terms" if she would forgo further bankruptcy proceedings. (*Aceves*, *supra*, 192 Cal.App.4th at pp. 221, 226.) She refrained from converting her pending chapter 7 case to a chapter 13 case and did not oppose the bank's motion to lift the bankruptcy stay, which the bankruptcy court granted. (*Aceves*, at p. 221.) Instead of negotiating with Aceves, the bank completed the foreclosure. (*Ibid.*)

The court concluded that the promise Aceves alleged was "sufficiently concrete to be enforceable." (*Aceves*, *supra*, 192 Cal.App.4th at p. 222.) Her complaint described the substance of her numerous written and oral contacts with the bank. (*Id.* at pp. 223-224.) It provided the dates on which each contact occurred and the names or positions of the individuals involved. (*Ibid.*) On that basis alone, *Aceves* is easily distinguished from this case. Unlike the clear and unambiguous promise that Aceves alleged, Donaldson alleged a variety of vague promises that "Chase" made in undescribed ways on unspecified dates. These included a "public" promise made in 2009 that " 'it would create an affordable mortgage obligation for the life of the loan through a combination of interest rate reductions, term extensions and principal forbearance . . . .' " *Aceves* is inapposite here. Defendants' demurrer to Donaldson's promissory estoppel cause of action was properly sustained.

It was properly sustained without leave to amend because Donaldson failed to demonstrate a reasonable possibility that the defect could be cured by amendment. (*Blank*, *supra*, 39 Cal.3d at p. 318.) It was his burden to do so. (*Ibid.*) In his proposed second amended complaint he alleged that defendants "made a promise, through oral and

14

written representations, that they would not foreclosure [*sic*] on the Subject Property if Plaintiff's [*sic*] completed an application for a loan modification and provided updated appraisals and profit and loss statements indicating that Plaintiff could afford to make the monthly payments on the modified loan." He further alleged that he complied with these requirements and was "in the process of obtaining an updated profit and loss statement showing that he is able to make payments on a $1.7 million loan . . . or a lesser amount."

These allegations do not cure the deficiencies that infected the earlier iteration of his promissory estoppel cause of action. The alleged promise is still not " ' "definite enough that a court can determine the scope of the duty[,] and the limits of performance [are still not] sufficiently defined to provide a rational basis for the assessment of damages." ' " (*Garcia*, *supra*, 183 Cal.App.4th at p. 1045.) The complaint does not allege who made the promise or when it was made. It does not allege that Chase agreed to reduce the amount of the loan to $1.7 million "or a lesser amount." It does not allege the amount of "the modified loan." It does not allege the term of the loan, the interest rate, or the "rights and remedies of the parties in case of default." (*Laks*, *supra*, 60 Cal.App.3d at p. 891.) After three attempts, we can assume that Donaldson's proposed second amended complaint stated his promissory estoppel cause of action in its strongest light. (*McCollum v. CBS, Inc.* (1988) 202 Cal.App.3d 989, 994; *San Mateo County v. Bartole* (1960) 184 Cal.App.2d 422, 434.) The trial court did not abuse its discretion in denying him another opportunity to plead a cause of action for promissory estoppel.

### 2. Wrongful Foreclosure

Defendants contend that the trial court properly sustained their demurrer to Donaldson's wrongful foreclosure cause of action because he could not allege a trustee's sale, did not allege any procedural irregularity, and lacked standing. We agree.

"To . . . maintain a wrongful foreclosure claim, a plaintiff must allege that (1) the defendants caused an illegal, fraudulent, or willfully oppressive sale of the property pursuant to a power of sale in a mortgage or deed of trust; (2) the plaintiff suffered

15

prejudice or harm; and (3) the plaintiff tendered the amount of the secured indebtedness or was excused from tendering." (*Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1062.) Here, Donaldson did not and could not allege the first element. His complaint admitted that the trustee's sale had not occurred. His wrongful foreclosure cause of action was at best premature, and the demurrer was properly sustained on that ground.

To the extent that Donaldson was attempting to state a cause of action for wrongful initiation of foreclosure premised on his contentions that "none of the Defendants is a holder of the Note, none of them can prove any interest in the Note, and none of them can prove that the Note is secured by the [deed of trust]," it fails for four distinct reasons. First, this court has specifically held that the foreclosing beneficiary-creditor need not produce the promissory note or otherwise prove that it holds the note before it can proceed with a nonjudicial foreclosure under a deed of trust. (*Debrunner v. Deutsche Bank National Trust* (2012) 204 Cal.App.4th 433, 440-442.) Second, Donaldson does not and cannot dispute that his deed of trust names CRC as the trustee and gives the trustee the power to foreclose on the Pebble Beach property. Indeed, his complaint admits that CRC "is listed as the Trustee" on the deed of trust.

Third, "California courts have refused to delay the nonjudicial foreclosure process by allowing trustor-debtors to pursue preemptive judicial actions to challenge the right, power, and authority of a foreclosing [party] to initiate and pursue foreclosure." (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 511 (*Jenkins*), disapproved on another ground in *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 939, fn. 13.) California's nonjudicial foreclosure statutes "do not contain express authority for such a preemptive action" and "even if the statutes are interpreted broadly, it cannot be said [that] the provisions imply the authority for such a preemptive action . . . ." (*Jenkins*, at p. 513; accord, *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App. 4th 75, 82 (*Siliga*), disapproved on another ground in

16

*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 939-514.) As explained in *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149 (*Gomes*), recognition of an implied statutory authorization to bring such an action "would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures." (*Gomes*, at p. 1155; accord, *Robinson v. Countrywide Home Loans, Inc.* (2011) 199 Cal.App.4th 42, 46.)

"[A]n action is 'preemptive' if the plaintiff alleges 'no specific factual basis' for the claim that the foreclosure was not initiated by the correct person." (*Siliga*, *supra*, 219 Cal.App.4th at p. 82.) Donaldson did not allege a specific factual basis here. His allegations that defendants lacked the power to foreclose were made on information and belief. Bare contentions and conclusions alleged on information and belief are insufficient to avoid California's bar against preemptive actions challenging a foreclosing party's authority to foreclose. (*Gomes*, *supra*, 192 Cal.App.4th at p. 1159.) Nor can Donaldson amend his complaint to assert a specific factual basis for alleging that the wrong entity initiated the foreclosure. His complaint admitted that the owner of his note and deed of trust was "unknown" to him.

Donaldson's reliance on *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079 (*Glaski*) is misplaced. *Glaski* is inapposite because it did not involve a preemptive challenge to a pending foreclosure. Instead, it involved a post-sale challenge to a completed foreclosure. (*Id.* at pp. 1086-1087.)

The fourth and final reason why Donaldson's purported cause of action for wrongful initiation of foreclosure fails is that he lacked standing to assert it. The acts giving rise to the purported cause of action (e.g., the recording of an allegedly false notice of default and election to sell and an allegedly fraudulent assignment of the deed of trust) occurred before Donaldson filed his chapter 7 petition. The cause of action became property of the bankruptcy estate when Donaldson filed his petition. (11 U.S.C.

17

§ 541(a)(1).) Thereafter, only the bankruptcy trustee could pursue it. (*Bostanian*, *supra*, 52 Cal.App.4th at p. 1084.)

To the extent Donaldson argues that the cause of action arose after he filed his bankruptcy petition, it nevertheless was property of the bankruptcy estate because it was a "[p]roceed[], product, [or] offspring" of his interest in the Pebble Beach property, which itself was property of the bankruptcy estate. (*Bostanian*, *supra*, 52 Cal.App.4th at p. 1084; 11 U.S.C. § 541(a)(6).) The purported cause of action remained property of the bankruptcy estate even after the bankruptcy case was closed, because Donaldson failed to alert the trustee to its existence or possible existence. (*M&M*, *supra*, 196 Cal.App.4th at p. 563; 11 U.S.C. § 554(d) ["Unless the court orders otherwise, property of the estate that is not abandoned . . . and that is not administered in the case remains property of the estate."].) Donaldson lacked standing to assert a cause of action for wrongful initiation of foreclosure. (*Reichert*; *supra*, 68 Cal.2d at pp. 829-830; see *In re JZ L.L.C.*, *supra*, 371 B.R. 412, 418-419.) For all of these reasons, the trial court did not err in sustaining the demurrer to his wrongful foreclosure cause of action. (*Reichert*, at p. 830.)

Nor did the trial court abuse its discretion in sustaining the demurrer without leave to amend. The court noted at the hearing that Donaldson filed his first amended complaint "with knowledge of [the standing issue] from the previous demurrer." Donaldson did not address the standing issue in the first amended complaint that he filed in November 2011 or in the proposed second amended complaint that he filed in August 2012. This is fatal to his claim because a "debtor must take affirmative steps to comply with [11 U.S.C.] section 554 concerning abandonment. Until the debtor secures an abandonment of the claim, the debtor lacks standing to pursue it." (*Bostanian*, *supra*, 52 Cal.App.4th at pp. 1083, 1087.)

Here, Donaldson failed to allege in any of his pleadings that he was seeking or even that he intended to seek to reopen his bankruptcy case to permit a new trustee either to pursue the wrongful foreclosure cause of action or to abandon it so that Donaldson

18

could pursue it. (Compare *Cloud*, *supra*, 67 Cal.App.4th at p. 1008 [plaintiff promptly "requested a stay in the trial court to reopen her bankruptcy case in order either to substitute the trustee as real party in interest or to obtain the trustee's abandonment of her claim"].) Moreover, Donaldson has not adequately addressed the issue on appeal. His opening brief contains only a passing reference to his "right" to reopen his bankruptcy case "for [the] benefit of creditors" but no suggestion that he ever attempted or intended to do so. In his reply brief, he asserts that his failure to disclose the existence of his claim against Chase resulted from his "inadvertence and mistake." That does not explain why he has made no move to reopen his bankruptcy case to secure an abandonment of his purported claims. He was obviously aware of those claims in January 2010 when he filed his original complaint. He became aware of the standing issue no later than July 1, 2011, when the trial court sustained defendants' demurrer to the original complaint. More than a year passed before the trial court ruled on defendants' second demurrer, yet Donaldson did not seek to reopen his bankruptcy case. Nothing in the record suggests that he intends to do so. In these circumstances, the trial court did not abuse its discretion in sustaining the demurrer to the wrongful foreclosure cause of action without leave to amend.

### 3. Negligence

Donaldson asserts that he "has stated a claim for negligence and has demonstrated that Chase owed him a duty of care. Defendants breached that duty, causing injury to Donaldson and he suffered actual damages." Defendants respond that the trial court properly sustained their demurrer because Donaldson failed adequately to allege that Chase owed him a duty of care or that he suffered damages from their breach of that duty. We agree that Donaldson did not adequately allege negligence.

"To state a cause of action for negligence, a plaintiff must allege [that] (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's damages or injuries. [Citation.] Whether a

19

duty of care exists is a question of law to be determined on a case-by-case basis. [Citation.]" (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 62 (*Lueras*).) "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." (*Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1096 (*Nymark*).) "[A] loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money." (*Lueras*, at p. 67.) Thus, a lender does not owe a borrower "a common law duty of care to offer, consider, or approve a loan modification, or to offer . . . alternatives to foreclosure." (*Lueras*, at p. 68.)

In his negligence cause of action, Donaldson averred that "Chase acting as Plaintiff's lender had a duty to exercise reasonable care and skill to maintain proper and accurate loan records, including but not limited to maintaining records on Chase's promises to Plaintiff to modify his loan . . . ." "Chase breached its duty of care and skill to Plaintiff in the servicing of Plaintiff's loan by failing to disclose to Plaintiff that it was not honoring its promise to modify his loan and by failing to disclose to Plaintiff that it was foreclosing on Plaintiff's Subject Property while telling him that the modified loan was in process." To the extent that Donaldson contends that Chase had a duty to approve a loan modification, his negligence cause of action fails because a lender owes no such duty. (*Lueras*, *supra*, 221 Cal.App.4th at p. 68.)

One California court has held that a lender who undertakes to review a loan for possible modification owes the borrower a duty of ordinary care in considering the application. (*Alvarez v. BAC Home Loans Servicing, L.P.* (2014) 228 Cal.App.4th 941, 944 (*Alvarez*).) To the extent that Donaldson contends that Chase owed him such a duty, his negligence claim fails because even if we assume that he had standing to assert such a claim and infer from his vague allegations that Chase undertook to consider a loan modification application, Donaldson failed to allege facts constituting a breach of that

20

duty.

In *Alvarez*, the plaintiffs alleged that their lenders mishandled their applications for loan modifications by relying on incorrect information. (*Alvarez*, *supra*, 228 Cal.App.4th at p. 945.) They alleged among other things that an employee of the defendants told Alvarez that modification of the loan secured by his home was rejected because his monthly gross income of $2,554.75 was inadequate, when his pay stubs in fact showed a monthly gross income of $6,075. Alvarez was also told that his application for modification of a loan secured by a rental property showed a $6,318.98 deficit in monthly income, when in fact there was no such deficit. Alvarez was also told that he failed to submit documents relevant to his application for modification of a loan secured by a different rental property, when the documents were in fact sent to and received by the defendants. Alvarez's coplaintiff De Haro was advised after two years' of discussions "'that the second lien holder prevented the modification from taking place.'" (*Alvarez*, *supra*, 228 Cal.App.4th at p. 945.) That information was false. (*Ibid*.)

The *Alvarez* court found *Garcia v. Ocwen Loan Servicing, LLC*[3] persuasive. In *Ocwen*, the defendant loan servicer cancelled the scheduled trustee's sale several times to allow time for processing the plaintiff's request for a loan modification. (*Ocwen*, at p. *1.) The loan servicer asked for additional documents, and the plaintiff faxed them to the number the loan servicer provided. (*Ibid*.) Unbeknownst to the plaintiff, the loan servicer routed the documents to the wrong department. (*Ibid*.) "Instead of routing the documents to its Home Retention Department, [an employee] routed them to its Short Sale Department." (*Ibid*.) Garcia tried to confirm that the documents were received. The next day, he received a recorded message that some documents were missing, but the message did not identify which documents were missing. "For the next several weeks, [Garcia] repeatedly tried to contact [the loan servicer] to determine which documents

---

[3]    *Garcia v. Ocwen Loan Servicing, LLC* (N.D.Cal., May 10, 2010, No. C 10-0290 PVT) 2010 WL 1881098 (*Ocwen*).

21

were missing, but he was unable to speak with any of [the company's] employees. Each time he received the same recorded message." (*Id.* at p. *2.) A month later, Garcia "was finally able to actually speak with one of the [loan servicer's] employees," who informed him that his home had been sold at a trustee's sale the day before. (*Ibid.*) Garcia "was never notified of the November 17, 2009 trustee's sale." (*Ibid.*)

The facts that Donaldson alleged were nothing like the facts alleged in *Alvarez* and *Ocwen.* Donaldson averred that defendants failed to disclose "that it was foreclosing on [the Pebble Beach property] while telling him the modified loan was in process." This assertion was flatly contradicted not only by the complaint's admissions that CRC recorded a notice of default on March 30, 2010, and a notice of trustee's sale on July 1, 2010, but more importantly, by copies of the notice of default (which the trial court judicially noticed) and of the notice of trustee's sale (which Donaldson attached as an exhibit to his complaint). Thus, even if we assume that Donaldson had standing to assert a negligence cause of action, infer from his vague allegations that defendants undertook to review an application for a loan modification, and further assume that those assumptions created a duty on defendants' part to exercise ordinary care in carrying out the task, Donaldson has not adequately pleaded a breach of that obligation. We conclude that the trial court properly sustained defendants' demurrer to the negligence cause of action.

### 4. Contract Void *ab Initio*

Donaldson asserts that a contract is void *ab initio* "if it seriously offends law or public policy . . . ." He contends that the trial court erred in sustaining the demurrer to his "contract void *ab initio*" cause of action because "there was no shared expectation— no meeting of the minds" and thus "no contract was formed between Donaldson and WaMu."

The factual basis for Donaldson's contract void *ab initio* cause of action is unclear. As we understand his argument, there was "no meeting of the minds" and thus no

contract for two reasons. The first reason is that he allegedly "expected that he would borrow money from WaMu, he would pay it back, and then he would own the [Pebble Beach property]," while "WaMu [allegedly] expected that [Donaldson] would borrow money, he would not be able to pay it back, and then WaMu or the investors would own the property." These speculative allegations about WaMu's undisclosed subjective intent are insufficient.

"'Under the objective test of contract formation, a "meeting of the minds" is unnecessary.'" (*Atlas Assurance Co., Ltd. v. McCombs Corp.* (1983) 146 Cal.App.3d 135, 144.) "'It is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation' [citation]. The parties' undisclosed intent or understanding is irrelevant to contract interpretation. [Citations.]" (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 956.) "'The mere state of mind of the parties is not the object of inquiry. The terms of the contract are determinable by an external, not by an internal standard—or by what has been termed the objective rather than the subjective test.'" (*Patel v. Liebermensch* (2008) 45 Cal.4th 344, 352.)

Here, the deed of trust states that "'Note' means the promissory note signed by [Donaldson] and dated May 01, 2007. The Note states that [Donaldson] owes [WaMu] two million five hundred thousand and 00/100 (U.S. $2,500,000) plus interest. [Donaldson] has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than June 01, 2037." Donaldson does not challenge this language, which in our view reflects both parties' unambiguous expectation that Donaldson would repay WaMu's $2.5 million loan to him. Nor does he challenge any language in the deed of trust, which provided a remedy in the event of his possible default on the loan. Donaldson's speculation about WaMu's subjective intent cannot override the objective manifestations of mutual assent found in exhibits to his complaint and documents judicially noticed. (*Dodd*, *supra*, 222 Cal.App.3d at p. 1627; *Evans*, *supra*, 38 Cal.4th at

23

p. 20.)

Donaldson's second reason why the contract is void is "because Defendants engaged in deceptive acts from the beginning and Defendants later used the fraudulent Irby signature in its foreclosure process." The complaint alleged on information and belief that WaMu "routinely approved predatory real estate loans" in 2006 and 2007 and "implemented unlawful lending practices by encouraging brokers and loan officers to falsify borrowers' income and assets . . . ." It did not allege that Donaldson's loan was predatory or that his income and assets were falsified. The complaint attacked the securitization process generally, decried the disintegration of "common law principles of contract formation, customary underwriting practices, and statutory procedures for transferring interests of real property," and complained that "WaMu failed to disclose . . . that its economic interests were adverse to [Donaldson] . . . ." In conclusory fashion, it alleged that his "participation in the mortgage contract was procured by overt and covert misrepresentations and nondisclosures. The parties did not share a single expectation with respect to any of the terms of the mortgage contract and therefore the contract represented by the Note and [deed of trust] was void *ab initio*." No factual allegations supported these broad contentions and conclusions. That alone was a proper basis for sustaining the demurrer.

The demurrer was properly sustained for an additional reason. The allegedly wrongful conduct giving rise to the cause of action occurred no later than May 2007, when Donaldson's participation in the mortgage contract was allegedly "procured by covert and overt misrepresentations and nondisclosures" and without any "meeting of the minds." The cause of action became property of the bankruptcy estate when Donaldson filed his chapter 7 petition in July 2010. (11 U.S.C. § 541(a)(1).) Donaldson never secured the trustee's abandonment of the cause of action, so it remains property of the bankruptcy estate. Donaldson lacks standing to assert it. Because he has made no move to reopen his bankruptcy case, the trial court did not abuse its discretion in sustaining the

24

demurrer to his contract void *ab initio* cause of action without leave to amend.

### 5. Quiet Title

Donaldson's quiet title cause of action alleged on information and belief that none of the defendants was a holder of the note, none could prove any interest in the note, and none could prove that the note was secured by the deed of trust. It further alleged that the obligations owed to WaMu under the deed of trust "were fulfilled and the loan was fully paid when WaMu received funds in excess of the balance on the Note as proceeds of sale through securitization(s) of the loan and insurance proceeds from Credit Default Swaps." Donaldson averred that he was entitled to a judicial declaration that title to the Pebble Beach property was "vested solely in [him]" and that defendants "have no right, title, lien, or interest in the [property]." Defendants contend that the trial court properly sustained their demurrer because Donaldson did not and cannot allege that he tendered the amount owing on his loan. We agree.

"It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." (*Shimpones v. Stickney* (1934) 219 Cal. 637, 649 (*Shimpones*).) The tender requirement is "based upon the equitable principle that he who seeks equity must do equity. . . . [A] court of equity will not aid a person in avoiding the payment of his or her debts." (*Mix v. Sodd* (1981) 126 Cal.App.3d 386, 390.) "The cloud upon his title persists until the debt is repaid." (*Aguilar v. Bocci* (1974) 39 Cal.App.3d 475, 477.) Exceptions to the tender rule that apply where a plaintiff seeks to enjoin or to set aside a foreclosure sale do not apply where a mortgagor seeks to quiet his or her title against the mortgagee. (*Lueras*, *supra*, 221 Cal.App.4th at p. 87.)

Here, the complaint admitted Donaldson's failure to tender the full amount due on his loan obligation. This is fatal to his quiet title cause of action. (*Shimpones*, *supra*, 219 Cal. at p. 649.) Nor can Donaldson avoid this result by alleging that defendants have "no right, title, lien, or interest" in the property. "The plaintiff in a quiet title suit is not helped by the weakness of his adversary's title but must stand upon the strength of his or

25

her own." (*Ibid.*) He "cannot clear his title without satisfying his debt." (*Aguilar v. Bocci*, *supra*, 39 Cal.App.3d at p. 477.)

Donaldson cannot avoid the tender requirement by alleging on information and belief that "the lawful beneficiary has been paid in full" through securitization and credit default swaps. Securitization does not affect the validity of a loan. A secured promissory note that is traded on the secondary market remains secured because the mortgage or deed of trust follows the note. (Civ. Code, § 2936 ["The assignment of a debt secured by mortgage carries with it the security."].) Thus, a lender or trustee does not lose its interest in a loan that "was packaged and resold in the secondary market, where it was put into a trust pool and securitized." (*Lane v. Vitek Real Estate Industries Group* (E.D.Cal. 2010) 713 F.Supp.2d 1092, 1099.)

Donaldson cites no authority to support his theory that he is entitled to quiet his title in the circumstances alleged. We have found none. Federal district court cases applying California law have rejected the theory Donaldson advances here, and we find those cases persuasive. (E.g., *Edwards v. Wachovia Mortgage* (S.D.Cal. Feb. 10, 2011, No. 10CV1763 WQH (POR) 2011 WL 589831, pp. *4-*5 [dismissing quiet title claim for failure to allege tender despite allegation that "note may have already been paid by a third-party [*sic*]"]; *Pedersen v. Greenpoint Mortgage Funding, Inc.* (E.D.Cal. Aug. 29, 2011, CIV No. S-11-0642 KJM EFB) 2011 WL 3818560, pp. *12-*13 ["Plaintiffs have not suggested they are able to tender the amount due under the note, whether or not it is owed to defendants"].) We conclude that the trial court did not err in dismissing the demurrer to Donaldson's quiet title cause of action without leave to amend.

### 6. Injunctive Relief

Donaldson asserts that he is "able to show" two of the four things that he concedes must be shown to obtain injunctive relief, namely, "probable success on the merits . . . and the imminent threat of great irreparable harm." Defendants contend that the trial court properly sustained their demurrer to Donaldson's purported cause of action for

injunctive relief.  We agree with defendants.

"Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted."  (*Shell Oil* v. *Richter* (1942) 52 Cal.App.2d 164, 168.)  Here, we have concluded that the trial court properly sustained the demurrers to each of Donaldson's causes of action without leave to amend.  Where none of his causes of action survived, Donaldson is not entitled to injunctive relief.

### D.  New Causes of Action in the Second Amended Complaint

Donaldson's proposed second amended complaint included many of the same causes of action that the trial court previously found deficient.  We have already concluded that the trial court properly sustained demurrers to those causes of action without leave to amend.  The only remaining question is whether the court abused its discretion in denying leave to assert the nine new causes of action (for breach of oral contract, breach of written contract, slander of title, cancellation of instruments, negligent misrepresentation, fraud, violation of the Rosenthal Fair Debt Collection Practices Act, unfair business practices, and declaratory relief) that Donaldson asserted.  Defendants contend that Donaldson waived this issue by failing to address it in his appellate briefs. We agree.

A fundamental rule of appellate review is that " '[a] judgment or order of the lower court is *presumed correct*' " and " 'error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  The appellant has the burden of overcoming the presumption of correctness.  "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."  (*Badie*, *supra*, 67 Cal.App.4th at pp. 784-785; *Title Guarantee & Trust Co. v. Fraternal Finance Co.* (1934) 220 Cal. 362, 363.)  On appeal from a judgment of dismissal after a demurrer is sustained without leave to amend, the plaintiff "must show in what manner he can amend his complaint and how that amendment will change the

27

legal effect of the pleading." (*Cooper*, *supra*, 70 Cal.2d at p. 636.)

Donaldson has not done so here. He simply asserts at the end of his opening brief that "the trial court's granting of demurrer without leave to amend was improper; must be rectified and the judgment reversed." He makes a similar assertion at the end of his reply brief. He does not set forth the elements of any of his nine new causes of action or provide any reasoned argument why any of them should have survived defendants' demurrers. His briefs fail to mention those nine causes of action. He has waived any claim of error with respect to his purported claims for breach of oral contract, breach of written contract, slander of title, cancellation of instruments, negligent misrepresentation, fraud, violation of the Rosenthal Fair Debt Collection Practices Act, unfair business practices, and declaratory relief.

## IV. Disposition

The judgment is affirmed.

_____
Mihara, J.


WE CONCUR:



_____
Bamattre-Manoukian, Acting P. J.




_____
Márquez, J.




*Donaldson v. California Reconveyance Co.*
H039747


29