Filed 9/28/21  Zambrano v. Ocwen Loan Servicing CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| ADRIAN ZAMBRANO, | B303814 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19PSCV00259) |
| v. | |
| OCWEN LOAN SERVICING, LLC, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gloria L. White-Brown, Judge.  Affirmed.

The Milner Firm and Timothy V. Milner for Plaintiff and Appellant.

Locke Lord, Regina J. McClendon and James C. Magid for Defendants and Respondents.

Plaintiff and Appellant Adrian Zambrano appeals from a judgment dismissing his claims against defendants and respondents PHH Mortgage Corporation as successor by merger to Ocwen Loan Servicing, LLC (Ocwen); Deutsche Bank National Trust Company, as Indenture Trustee under the Indenture Relating to IMH Assets Corp., Collateralized Asset-Backed Bonds, Series 2005-4 (Deutsche Bank); and Western Progressive Trustee, LLC, d/b/a Western Progressive, LLC (collectively, respondents) following an order sustaining their demurrer to Zambrano's first amended complaint (FAC) without leave to amend. We affirm.

The FAC alleges causes of action for negligence, negligent misrepresentation, violation of Business and Professions Code section 17200 (section 17200), and promissory estoppel. We can affirm the court's ruling as to the first three causes of action without further analysis, because Zambrano does not challenge the court's conclusions that the FAC failed to plead actionable negligent misrepresentation and that Zambrano's negligence claim was untimely. Nor does Zambrano challenge the court's ruling regarding the section 17200 claim. As to his promissory estoppel claim, the court correctly concluded that Zambrano had failed to plead facts sufficient to support reasonable reliance, a necessary element of that claim. We further hold that the trial court acted within its discretion in denying Zambrano leave to amend, given that Zambrano failed to address these same deficiencies in the FAC after they were raised in an earlier sustained demurrer, and that Zambrano has failed to identify any new allegations he might add to the FAC to cure them.

## FACTS AND PROCEEDINGS BELOW

Because "[a] demurrer tests the legal sufficiency of the challenged pleading," "[w]e accept as true all material facts properly pleaded in the complaint." (*Brown v. Los Angeles Unified School Dist.* (2021) 60 Cal.App.5th 1092, 1103.) Accordingly, the following factual background summary is based solely on the properly pleaded allegations in the FAC, which we accept as true for the purposes of our demurrer analysis.

### A. *Alleged Factual Basis for Claims*

In 2005, Zambrano obtained a $325,600 loan payable over 30 years, secured by a deed of trust against his home. That loan contained an "adjustable rate rider," which, after one year, allowed the interest rate on the loan to fluctuate within a certain range every six months.[1]

The loan also contained an "interest-only addendum" that permitted Zambrano to make no payments on the principal of the loan for the first five years. Thus, during this initial five-year period, Zambrano's minimum monthly payment on the loan would be the monthly interest due at the applicable (potentially fluctuating) interest rate. The addendum also permitted voluntary payments of principal. After the five-year interest-only

---

[1] Specifically, the adjustable rate rider set the interest rate at 5.875 percent for the first year of the loan. After that first year, the interest rate would be re-set every six months to a rate calculated by adding 3.625 percent to the most recent rate in the LIBOR index. The rider permitted a deviation from this formula as necessary to assure that (1) the interest rate would never increase more than one percent during any six-month period, and (2) that the interest rate would neither drop below 3.625 percent nor exceed 11.875 percent.

period expired, the minimum monthly payment would include both principal and interest. Because the minimum payment amount after the interest-only period included both principal and interest, it would necessarily be greater than the minimum payments required during the interest-only period. The specific amount of the minimum principal-and-interest payment required in any given month would depend on the applicable interest rate under the adjustable rate rider and the remaining principal on the loan.

"In or around March 2010 when [Zambrano's] interest[-]only period on his loan was set to expire, [Zambrano] received a modification . . . to extend the interest[-]only period of the loan for approximately another five years." The record does not contain any further details about this 2010 modification and whether it modified any other terms of the loan, the interest-only addendum, or the adjustable rate rider.

Then, "[i]n or around March 2015" when the extended interest-only period expired, Ocwen, the loan's servicer at the time, "told [Zambrano] that he was approved for a[nother] loan modification and that the modification would no longer include an interest[-]only payment and [that] it would correct the interest[-]only issues with the loan that kept causing the payment to increase when the interest[-]only period expired." The FAC does not more specifically allege what these "interest-only issues" were and/or how the modification Ocwen allegedly indicated Zambrano had been approved for would "correct" those issues. The FAC alleges that Zambrano executed a loan modification in 2015, but does not identify the terms of the 2015 loan modification, nor does the FAC attach the 2015 loan modification.

4

"On or around May 2018, the interest[-]only period [under the 2015 modification] ended, and [Zambrano's] mortgage loan payment increased over 100 [percent]. This is when [Zambrano] learned that the loan modification failed to correct the interest[-]only issues with the loan and that his payment would be higher than the substantial increase in the monthly mortgage payments that occurred in March 2015 and was the reason for the modification of the loan. [Zambrano] was not able to afford the substantial monthly payment increase so he reached out to Ocwen for assistance." (Capitalization omitted.)

"In or around May 2018, [Zambrano] submitted a complete loan modification [application] to Ocwen" and six months later, "Deutsche Bank and Ocwen offered [Zambrano] a [third] loan modification" which "resulted in a payment that was just as high if not higher than the . . . mortgage payment" under the 2015 modification because "it did not change the maturity date of the loan" (capitalization omitted), and "allowed an interest[-]only payment to be made for over ten years," which "resulted in the principal balance now having to be paid off over a period of 17 years as opposed to 30 years. Both these things made the payment increase substantially." "The [2018] loan modification offer also claimed that the principal balance on the loan was $373,837.58," which the FAC alleges is incorrect. The FAC does not allege whether Zambrano accepted this 2018 loan modification offer.

Zambrano went into default on his loan and incurred late fees and foreclosure fees.

**B.** *Zambrano's Initial Complaint and Respondents' First Demurrer*

In March 2019, Zambrano filed an initial complaint against respondents alleging causes of action for negligence, negligent misrepresentation, promissory estoppel, and violation of section 17200. Respondents filed a joint demurrer, and Zambrano did not oppose the demurrer. The trial court sustained the demurrer with leave to amend. In so doing, the court concluded that respondents did not owe Zambrano a duty of care, and that Zambrano had alleged neither an actionable negligent misrepresentation nor an actionable false promise. Specifically, the court concluded that the alleged 2015 statement underlying Zambrano's misrepresentation and promissory estoppel claims in the initial complaint—namely, Ocwen's alleged statement that Zambrano "qualified for a loan modification that would make his monthly payment affordable and consistent"—was neither a representation of a past or existing fact nor a "clear and unambiguous promise." The court further concluded that Zambrano had failed to sufficiently allege any causal relationship between the alleged misconduct and the loss of any money or property. Respondents' demurrer also argued that Zambrano's claims were barred by the statute of limitations, but the court declined to sustain on this ground.

**C.** *The FAC*

Zambrano filed the FAC, which contains a revised description of Ocwen's March 2015 statement. Namely, the FAC alleges Ocwen told Zambrano he "was approved for a loan modification and . . . that the modification would no longer include an interest[-]only payment and it would correct the interest[-]only issues with the loan that kept causing the

6

payment to increase when the interest[-]only period expired." The FAC further alleged that "[Zambrano] relied on [Ocwen's] promise and did not seek out other options such as refinancing the loan through another lender that could have made his monthly mortgage payments affordable for the life of the loan," and that Zambrano "was unaware that th[e] type of modification [offered in March 2015] only placed a band[-]aid on the issue and did not address the affordable monthly mortgage payment over the course of the loan." The FAC alleges that as a result of Ocwen's alleged negligent misrepresentation and false promise, as well as the negligence of both Ocwen and Deutsche Bank, he was unable to afford his mortgage payments and the loan went into default. Like the initial complaint, the FAC includes a general allegation that respondents concealed their misconduct, and that Zambrano could not have discovered it before 2018 (when the interest-only period under the 2015 modification expired), but the FAC does not allege any facts supporting why or how this was so.

### D. *Demurrer to the FAC and Resulting Judgment Against Zambrano*

Respondents demurred to the FAC. On the morning of the hearing on the demurrer, the court provided a written tentative ruling, which counsel acknowledged he had reviewed prior to the hearing. The tentative ruling sustained respondents' joint demurrer without leave to amend, but indicated that the court would consider a request for leave to amend, if supported by "an offer of proof." (Boldface omitted.) At the hearing, the court again indicated it would consider an offer of proof to cure the deficiencies in the FAC. Counsel specially appearing for Zambrano declined to make such an offer and also declined the

7

court's suggestion that he call Zambrano's attorney of record, even during the hearing, to provide the necessary information. Nor did counsel specially appearing for Zambrano request a continuance to obtain the necessary information.

The court ultimately adopted its tentative ruling, which noted, among other deficiencies, that the FAC failed to state facts to establish reasonable reliance on Ocwen's alleged March 2015 promise.[2]

The court concluded that the FAC did not cure many of the defects in the prior complaint. On this basis, as well as the failure to act on the court's invitation to offer facts that would cure the defects, the court denied leave to amend.

The court entered judgment dismissing Zambrano's claims, and Zambrano timely appealed.

## DISCUSSION

### A. *The Trial Court Properly Sustained the Demurrer*

Zambrano contends that the trial court erred in sustaining the demurrer to the negligence, negligent misrepresentation, and promissory estoppel causes of action. Our review is de novo. (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 264, disapproved of on other grounds by *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 937.)

---

[2] The court made this ruling in analyzing the negligent misrepresentation claim, but it applies equally to Zambrano's promissory estoppel claim, which is based on the same factual allegations regarding Ocwen's March 2015 statements as the promissory estoppel claim and requires a showing of reasonable reliance on the alleged false promise.

8

### 1. *The negligence and negligent misrepresentation claims*

Zambrano argues the trial court erred in its analysis of his negligence and negligent misrepresentation claims, but does not challenge the court's conclusions (1) that the FAC failed to allege respondents made a misrepresentation of " ' "past or existing facts," ' " a required element of a negligent misrepresentation claim (*Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 158), or (2) that Zambrano's negligence claim is untimely.  He has thus conceded these points. (See *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 ["[i]ssues not raised in an appellant's brief are deemed waived or abandoned"]; *Cox Cable San Diego, Inc. v. City of San Diego* (1987) 188 Cal.App.3d 952, 968 [on appeal, "[i]f an argument is not presented, it will not be considered"].)  Because these unchallenged deficiencies identified by the trial court provide an independently sufficient basis for granting the respondents' demurrer as to these claims, we need not address Zambrano's arguments as to purported errors in the court's rulings on those claims.  (See *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 (*Aubry*) [reviewing court must affirm judgment " 'if any one of the several grounds of demurrer is well taken' "].)

### 2. *The FAC does not allege facts sufficient to establish Zambrano reasonably relied on Ocwen's alleged false promises.*

The required elements for promissory estoppel are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." (*Laks v. Coast Fed.*

9

*Sav. & Loan Assn.* (1976) 60 Cal.App.3d 885, 890 (*Laks*).) The false promise alleged in the FAC is Ocwen's 2015 statements that "[Zambrano] was approved for a loan modification and that the modification would no longer include an interest[-]only payment and [that] it would correct the interest[-]only issues with the loan that kept causing the payment to increase when the interest[-]only period expired." Among other deficiencies, the trial court concluded that this allegation did not state facts sufficient to support reasonable reliance.[3] We agree.

" '[W]hether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts.' " (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239.) That is the situation here. It is unreasonable for a borrower to expect a loan modification that would be to his satisfaction based on a vague statement about changing one aspect of the loan (the interest-only payment option). The statement does not identify any of the key terms of the proposed loan, including, most notably, the interest rate. Thus, Zambrano "could not have had legitimate expectations that this was a binding offer; therefore, [he] could not reasonably have relied on it." (See *Laks, supra,* 60 Cal.App.3d at p. 893 [promissory estoppel claim failed for lack of clear and unambiguous promise and lack of reasonable reliance where loan offer was conditional and did not include many key terms of loan].) Indeed, without the offer specifying the interest rate Zambrano was approved to receive as part of the loan modification, "[n]o borrower could reasonably rely

---

[3] Because we agree with the trial court on this point, we need not consider whether the FAC sufficiently pleads the other elements of a promissory estoppel claim.

on such a promise [to issue a loan modification] because the offered modification might not lower their monthly payments sufficiently to allow them to avoid default." (*Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150, 1179 (*Daniels*) [plaintiff had not sufficiently alleged promissory estoppel because allegations of promise to offer a loan modification did not include any key terms of the loan]; see also *White v. J.P. Morgan Chase, Inc.* (E.D.Cal. 2016) 167 F.Supp.3d 1108, 1113 [plaintiff had not alleged reasonable reliance because promise of a loan relied upon "contained no essential terms" such as payment schedules, prepayment conditions, and terms for interest calculations, and was thus "fatally uncertain"], affd. *sub nom. White v. JPMorgan Chase & Co.* (9th Cir. 2017) 702 Fed.Appx. 642.)

Finally, we also note that a "plaintiff's reliance is not reasonable when he ' " 'put[s] faith in representations . . . which are shown by facts within his observation to be so patently and obviously false that he must have closed his eyes to avoid discovery of the truth. . . .' [Citation.]" [Citation.]' [Citation]." (*Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1067.) One who signs a document is presumed to know its contents "and cannot complain of unfamiliarity with the language of the instrument." (*Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 710; accord, *Stewart v. Preston Pipeline Inc.* (2005) 134 Cal.App.4th 1565, 1588–1589.) The terms of the 2015 loan modification agreement Zambrano signed were thus within his observation as a matter of law.

Because we agree with the trial court that Zambrano has not alleged facts sufficient to support reasonable reliance, we need not reach Zambrano's arguments regarding causation or

11

whether the statute of limitations bars his promissory estoppel claim.  (See *Aubry, supra*, 2 Cal.4th at p. 967.)

### B.     *The Trial Court Did Not Abuse Its Discretion in Denying Leave to Amend*

In the alternative, Zambrano contends that the court should have granted him leave to amend, an issue we review for an abuse of discretion.  (*Vaca v. Wachovia Mortgage Corp.* (2011) 198 Cal.App.4th 737, 743.)

" '[O]n appeal the plaintiff . . . bear[s] the burden of proving there is a reasonable possibility the defect in the pleading can be cured by amendment.  [Citation.]' " (*Everett v. State Farm General Ins. Co.* (2008) 162 Cal.App.4th 649, 655.)  "To show abuse of discretion, plaintiff must show in what manner the complaint could be amended and how the amendment would change the legal effect of the complaint, i.e., state a cause of action." (*Buller v. Sutter Health* (2008) 160 Cal.App.4th 981, 992; accord*, Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636 (*Cooper*) [to establish an abuse of discretion, plaintiff "must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading"].)  The trial court gave Zambrano an opportunity to cure the defects in his initial complaint, but Zambrano was unable to do so in the FAC.  Although the court offered him yet another opportunity to cure the defects if he could identify how he would amend the FAC to do so, he declined the opportunity.  Although a plaintiff may propose new facts for the first time on appeal to explain how a complaint may be amended to state a cause of action (see *Connerly v. State of California* (2014) 229 Cal.App.4th 457, 460),

Zambrano has not done so.[4]  Therefore, the court did not abuse its discretion in denying Zambrano another attempt to cure the defects in his complaint.  (See *Cooper, supra*, 70 Cal.2d at p. 636.)

---

[4] At the hearing before this court, Zambrano represented that, if given the chance to amend the FAC, he would add a fraud cause of action and allege that, in 2015, Ocwen represented to Zambrano that he could obtain a loan modification that would have a fixed (rather than adjustable) interest rate, a term of 30 years, and would not increase his principal amount.  As Zambrano failed to identify these proposed allegations in his appellate briefing, we do not consider them.  Even if we were to consider them, however, Zambrano still would not have met his burden regarding leave to amend.  A version of the FAC that includes these additional allegations would still be deficient as a matter of law because, for example, it still would not identify a crucial element of a loan modification—the interest rate to be paid.  Thus, for the reasons discussed above, Zambrano could not have reasonably relied on Ocwen's alleged statements as the sole basis for understanding the loan modification to which he ultimately agreed.

**DISPOSITION**

The judgment is affirmed.  Respondents are awarded their costs on appeal.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


CRANDALL, J.**\***

---

**\*** Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.